## FISHBLATE v. FIDELITY CO.

(Filed March 20, 1906).

*Accident Insurance—Material Misrepresentation—Warranty —Harmless Error—Reply—Issues—Knowledge of Agent.*

1. In an action for indemnity on an accident policy where, on an issue involving the question as to whether the plaintiff, in representing himself to be sound physically and mentally, made a false statement on a matter material to the contract, a charge that a misrepresentation to become material, must be as to a defect which contributes in some way to the loss for which indemnity is claimed, is erroneous.

2. Every fact untruly asserted or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of premiums.

3. In an action for indemnity on an accident policy, where the jury found that the defendant knew of the mental and physical condition of the plaintiff at the time the policy was issued, a judgment in favor of the plaintiff will not be disturbed for an error in the charge on the issue as to the warranty.

4. In an action for indemnity on an accident policy where the answer set up a breach of warranty by way of defense, a reply was not required, and the court properly submitted an issue as to whether the defendant had knowledge of the mental and physical condition of the plaintiff at the time the policy was issued.

5. Where the local agent of an insurance company has actual knowledge of the falsity of a statement made by the insured in his application, and forwards the application upon which the policy is issued, the knowledge of the agent is the knowledge of the company, and the false statement will not avoid the contract, in the absence of any evidence of actual fraud on the part of the applicant and the agent.

6. The clause in an accident policy that "no notice or knowledge of the agent or any other person shall be held to effect a waiver or change in this contract or any part of it," is ineffective for the purpose designed.

ACTION by S. H. Fishblate against Fidelity and Casualty Co., heard by *Judge W. R. Allen* and a jury, at the October Term, 1905, of the Superior Court of NEW HANOVER.

The plaintiff, holding an accident policy in the defendant company, which in terms covers the injury, files his complaint alleging the loss of an eye by accidental injury received when crossing the streets in the city of Wilmington, on or about February 12, 1904, and offered evidence tending to show that the injury so received resulted in inflammation of the eye, which necessitated its removal by surgical operation; that notice was given and demand duly made on the company for the amount due on the policy.

The defendant admitted the policy and the loss of the eye and demand duly made, but alleged that the loss of the eye resulted not from accidental and external injury, but from pre-existent disease, and further resisted recovery on the ground that the plaintiff had made material misrepresentations, inducing the contract, as to his physical and mental condition at the time the policy was applied for.

The plaintiff replied, claiming that no such misrepresentations or concealments had been made by him, and further that the defendant's agent with whom he dealt had full notice and knowledge of the plaintiff's exact physical and mental condition at the time the policy was taken out. · This reply was not formally drawn out and made a part of the pleadings, but an issue addressed to this question was submitted, the court stating that in its opinion no formal reply was required in order to raise the issue, but if he decided otherwise, he would permit the plaintiff to amend the pleadings in this respect. The defendant excepted.

There was testimony on the part of defendant tending to show that sometime previous to taking out the policy, the plaintiff's eye had been diseased and the same had thereby been weakened and left with a tendency to inflame, and there was some evidence tending to show that the plaintiff was not

sound in some other respects, having rheumatic gout, etc. There was testimony from the plaintiff to show that eight or ten years ago the plaintiff's eye had become inflamed, causing ulceration and necessitating a surgical operation, but that the eye had permanently healed, and while the sight was somewhat impaired, the eye was sound and well and no longer gave any trouble. Experts testified that the eye was cured, but the sight somewhat impaired. There was evidence also to the effect that the defendant's agent, at the time the policy was applied for and taken out, was fully aware of the trouble the plaintiff had had with his eye and its present condition, and that he was also fully informed of the plaintiff's physical and mental condition.

Issues were then submitted and, under the charge of the court, answered by the jury as follows: 1. Was the plaintiff's eye lost as a result directly and independently of all other causes from bodily injuries sustained through external, violent and accidental means? Yes. 2. Did the plaintiff warrant in the contract of insurance that he was in a sound condition mentally and physically? Yes. 3. If so, was said warranty false? No. 4. If so, was it knowingly false? (There was no answer to this issue, it not being necessary). 5. Did the defendant have knowledge of the mental and physical condition of the plaintiff at the time the policy was issued? Yes. 6. And it being agreed by both plaintiff and defendant that the amount of damage, if any, should be $1,700 and interest, and be answered by the court, and the court so answered. Judgment on the verdict. Defendant excepted and appealed.

*Meares & Ruark* for the defendant.
*John D. Bellamy, Rountree & Carr* and *W. J. Bellamy* for the plaintiff.

HOKE, J., after stating the case: The issues submitted and answered by the jury are determinative of the controversy

in the plaintiff's favor, and we find no error which requires that a new trial should be awarded. In response to the first issue, the jury have answered that the plaintiff's eye was destroyed by external, violent and accidental means, directly and independently of all other causes. The verdict on the second issue established a warranty in the contract of insurance that the plaintiff was sound mentally and physically when the same was made, and, on the third issue, that this warranty has not been broken.

There is no exception to the charge of the court on the first and second issues. On the third issue the defendant excepts for that the court charged the jury among other things as follows: "So that it becomes material to inquire under that issue (the third) what is meant by sound physically and mentally. This does not mean that a person should be perfect both in mind and body, but it means that he should not be so impaired in body and mind as to materially cause the injury complained of. If you find from the evidence that the condition of his eye was such that he would ultimately have lost sight, without the interference of external and accidental causes, though not at the time he did lose it, then he would not be sound physically and mentally within the meaning of the policy, although the loss of the eye—the loss of his sight— was hastened by external means, and although he would not have lost his sight at that time, and on the other hand the eye was sound within the meaning of the policy if he would not have lost his sight, but for the external, violent and accidental means. I repeat, that if you find from the evidence that the condition of the eye was such that he would ultimately have lost sight without the interference of external and accidental causes, though he would not have lost his sight at the time he did lose it, then he would not be sound physically and mentally within the meaning of the policy, although the loss of sight was hastened by external means, and although he would not have lost his sight at the time he did lose it, and on the

other hand, the eye was sound within the meaning of the policy if he would not have lost his sight, but for external, violent and accidental means." This charge might be upheld on the first issue, and is perhaps more favorable to the defendant on that issue than he could require. *Freeman v. Accident Asso.,* 156 Mass., 357; *Fetter v. Casualty Co.,* 174 Mo., 256.

But on the third issue we are of opinion that the charge is not in accord with the authorities. This issue involves the question as to whether the plaintiff, in representing himself to be sound physically and mentally, made a false statement on a matter material to the contract, and the charge, as we interpret it, means that to constitute the breach of his stipulation, so far as the eye is concerned, it must have been affected with a disease that would have in any event have destroyed the sight, and certainly involves the proposition that, to become material, a misrepresentation must be as to a defect which contributes in some way to the loss and damage for which the indemnity is claimed. But in the absence of some legislation, the term "material," in cases of this character, is not restricted in the way here suggested. In 16 Am. & Eng. Enc. (2 Ed.), 933, it is said that "Every fact untruly asserted or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally influence the judgment of the underwriter in making the contract at all, or in establishing the degree and character of the risk, or in fixing the rate of premium." To same effect is Vance on Insurance, 284.

Our statute on this subject, Revisal, vol. 2, sec. 4646, provides that "All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed and held representations and not warranties, nor shall any representation, unless material or fraudulent, prevent a recovery on the policy." This provision enters into and becomes a part of this and every policy issued and payable in

this State, and, where the term warranty is used, the statute operates and makes the same a representation, and one which avoids the policy only in case it is false and also fraudulent or material.

It will be noted that our statute does not undertake to define or limit the word "material." In several of the States the legislation is more specific and provides that a misrepresentation only avoids a policy when fraudulent or material to the risk. Even if our statute should be susceptible of this construction, it certainly does not go to the extent indicated in the charge that, to be material, the defect alleged must in some way have contributed to the loss for which indemnity is claimed.

While there was error in the charge on the third issue, we are of opinion that the verdict and judgment should not be disturbed on that account, for the reason that the response of the jury to the fifth issue establishes the plaintiff's right to recover—"that the defendant knew of the mental and physical condition of the plaintiff at the time the policy was issued." There is no error claimed in the charge of the judge below on this issue, and the only exception noted is that this issue was not raised by the pleadings. We agree with the trial judge that no reply was required in order to raise this issue. The answer of the defendant setting up a breach of warranty was by way of defense, and not as a counterclaim. In such case, the court in its discretion may direct a reply, but this is not positively required by the statute. Revisal, secs. 485 and 503. And in this last section it is provided: "But the allegation of new matter in the answer, not relating to a counterclaim, or of new matter in the reply, is to be deemed controverted by the adverse party as upon a direct denial or avoidance, as the case may require." The new matter in the answer being by way of defense and not a counter-claim, the statute therefore raised the issue. If the new matter, by way of avoidance, renders it desirable that a reply

be made, the judge may require one as stated. If it be under circumstances that take the party by surprise, the judge may and should order a continuance, but, here, the issue being raised by the statute, no harm was done, as all the witnesses to the transaction were in court, and no surprise or undue advantage was caused or suggested.

The fifth issue was then properly submitted, and having been answered in favor of the plaintiff, our authorities are decisive as to his right to recover the amount of the policy. There was evidence to the effect that the agent of the defendant was fully informed of the plaintiff's physical and mental condition, both as to the eye and the other unsoundness suggested.

In *Follette v. Accident Asso.,* 110 N. C., 377, it is held that "Where the local agent of an insurance company has actual knowledge of the falsity of a statement made by the insured in his application, and forwards the application upon which the policy is issued, the knowledge of the agent is the knowledge of the company, and the false statement will not avoid the contract."

In *Grabbs v. Insurance Co.,* 125 N. C., 389, it is held: "3. The knowledge of the local agent of an insurance company is in law the knowledge of the principal. Conditions in a policy working a forfeiture are matters of contract and not of limitation, and may be waived by the insurer, and such waiver may be presumed from the acts of the agent. 4. An implied waiver is in the nature of an estoppel *in pais* enforcible by a court of equity. An insurance company cannot be permitted to knowingly issue a worthless policy upon a valuable consideration." To like effect is *Continental Insurance Co. v. Pearce,* 39 Kansas, 396; *Dietz v. Insurance Co.,* 31 W. Va., 851, and *Bawdin v. Ins. Co.,* L. R. Q. B. Div., 2, p. 534. And this is the generally accepted doctrine, except under circumstances involving an element of fraud on the company, on the part of both the applicant and the agent, as

in *Sprinkle's case,* 124 N. C., 405; and there are no such circumstances shown to exist here.

There was evidence that the plaintiff informed the agent that this eye was cured and that the sight was not so good as it formerly was, but had healed from the first attack; and further, that the agent knew all about the eye and its condition. The agent denied this, but the jury have determined the matter for the plaintiff.

There is very little testimony of any other unsoundness—hardly enough for a jury to consider. It seems really to have amounted to this, that both the agent and the applicant were perhaps mistaken as to what kind or degree of unsoundness might have been regarded as material. But there was testimony to the effect that whatever unsoundness existed the agent of the company was fully informed of it, and there is no evidence of any such glaring misstatements as would permit the inference of actual fraud on the part of either the agent or the plaintiff. This being true, the authorities cited are conclusive and there is no error that requires a new trial.

We are not inadvertent to the clause in the policy which provides that "no notice or knowledge of the agent or any other person shall be held to effect a waiver or change in this contract or any part of it." * * * The effect of a clause of this kind has been very much discussed in the courts, and there is high authority for the position that to ignore such a stipulation would be to place an undue limitation on the right of contract, and to threaten the sanctity of written instruments by breaking down the rule that such contracts cannot be changed or varied by parol. But we think the great weight of authority, certainly in the State courts, favors the position that a clause of this character is ineffective for the purpose designed and that an insurance company shall not appoint an agent, use his services, accept the results of his work, and repudiate this essential and inherent feature of the law of agency, that a knowledge of the agent is the knowledge

of the company.  As stated in *Sternnamen v. Insurance Co.,*
170 N. Y., 13: "While, as a general rule, parties have a right
to make such contracts as they see fit, this right is restricted
by legislation, by public policy and by the nature of things.
They cannot stipulate that facts which the law declares estab-
lish a certain relation not only do not establish that relation,
but establish directly the opposite." See also *Kansal v. Ins.
Co.,* 31 Minn., 17; *Aetna Live Stock Co. v. Olmstead,* 21
Mich., 346; *Sternnaman v. Ins. Co., supra; Dietz v. Ins.
Co., supra.*  The principal is well stated by a recent writer
on insurance as follows: "Again, a second incident of the re-
lation of principal and agent is that any information material
to the transaction, either possessed by the agent at the time of
the transaction or acquired by him before its completion, is
deemed to be the knowledge of the principal, at least so far as
that transaction is concerned, even though in fact the knowl-
edge is not communicated to the principal at all.  It is here to
be observed—and the importance of the principal is so great
that it cannot be too strongly emphasized—that these inci-
dents of agency are created by the law and not by the parties.
The insurer is charged with the knowledge acquired by his
agent in making or negotiating a contract of insurance, not
because he has consented to be so charged, nor because he has
authorized his agent so to bind him, but because, as a legal con-
sequence of the relation he sustains to the agent, the latter's
knowledge is imputed to him.  It therefore follows that this
incident, created by the law in response to the demands of pub-
lic policy irrespective of agreement, cannot be destroyed or al-
tered by the agreement of the parties.  The parties cannot by
their contract contravene the policy of the law in this instance
any more than the husband, by contract, can escape his duty to
support the wife, or the carrier can by contract exempt him-
self from liability for his negligent failure to carry safely his
passenger.  Those cases which ignore this principle and re-

gard these legal incidents conferred and subject to limitation, are much to be deplored." Vance, pp. 304 and 305. And this we hold to be the better doctrine.

There is no error and the judgment below is
Affirmed.