LILLIE BRYANT v. METROPOLITAN LIFE INSURANCE
COMPANY.

(Filed 25 March, 1908).

1. Insurance — Application — Statements—Warranty—Misrepresenta-
   tions—Effect.

   Under Revisal (Vol. II), sec. 4808, providing that statements or
   descriptions in applications for policies of life insurance, or in the
   policy itself, are to be representations and not warranties, and do
   not prevent a recovery unless material, it is not necessary to de-
   feat a recovery that a material misrepresentation by the applicant
   must contribute in some way to the loss for which indemnity is
   claimed.

2. Insurance—Application—Statements—Materiality.

   In an application for a policy of life insurance every fact stated
   will be deemed material, under Revisal (Vol. II), sec. 4808, which
   would materially influence the judgment of the insurance com-
   pany either in accepting the risk or in fixing the premium rate.

3. Insurance — Application — Statements — Care of Physician — Rela-
   tionship—Effect.

   When it appeared that the insured, in his application for a
   policy of life insurance, made a statement that he had not been
   under the care of a physician within twelve months next preceding
   its date, it was not necessary that he should have been bedridden
   to constitute the relationship; for, if he was apprehensive as to
   his condition, though "up and around," within the time named,
   consulted a physician and entrusted his case to him, it would be
   a material representation, and, if false, would relieve the defend-
   ant from the obligation of the contract by reason of the death of
   the insured.

4. Same.

   Upon objection properly taken, it was error in the court below
   not to submit a determinative issue to the jury for their findings
   upon the truth of a statement made by the applicant that he had
   not been under the care of a physician within two years next pre-
   ceding that time, when there was evidence by a witness (a doctor)
   to the effect that the insured, upon whose death the policy sued on
   matured, called at his office about five or six times within the two-
   year period; that he put him on creosote with strychnine and hy-
   pophosphites, and afterwards gave him cod liver oil and creosote
   and advice as to his surroundings, diet, etc.

5. Same—Evidence—Issues.

   When there was evidence that the insured made a misrepre-
   sentation in his application for a policy of life insurance, that he

had not been under the care of a physician within two years, such conditions and other relevant facts and circumstances relating to the truth or falsehood of the statement should be determined by the jury upon a proper issue.

ACTION to recover on a life insurance policy issued by defendant company on the life of Matthew Bryant, brought by his widow and beneficiary of the policy, tried before *Neal, J.,* and a jury, at October Term, 1907 of EDGECOMBE.

In the answer defendant admitted that proper proof of death of the insured had been furnished the company, which resisted recovery on the ground chiefly that the insured, unknown to the company, had consumption at the time the policy was delivered, and that the insured, at the time of the application for the policy, made false representations to the company on material matters, chiefly that he had never had consumption, that he was then in sound health, and that he had not been under the care of any physician within two years.

In apt time defendant's counsel tendered issues addressed to these defenses, and the question as to the proper issues was reserved by the court. It was shown that application for the policy was made 3 August, 1905; that medical examination was had 4 August, 1905; that the policy was received by the agent 10 August and delivered to insured 2 September, and that insured died 31 December, 1905. At the close of the testimony the court, by consent of the parties, found certain facts, considered as material and relevant to the inquiry, as follows: That Matthew Bryant, on 3 August, 1905, made to the defendant an application for insurance, and in the said application represented to the said defendant that he did not have consumption; that the said representation was a material one. He also represented to the company that he had not been under the care of a physician within two years next preceding that time, and on that point the following is the undisputed evidence:

Dr. Whitehead was asked, "Please state what medical attention you gave Bryant from start to finish," and he replied: "He called at my office about five or six times within twelve months' time. I put him on creosote with strychnine and hypophosphites. Afterwards I gave him cod liver oil and creosote. This is all the medical treatment I gave him. I gave him advice as to his surroundings, diet, etc. This was about twelve months prior to his death."

The said inquiry was a material one. It was contracted and agreed between the insured and the defendant at the time of the application that the said company should incur no liability until the delivery of the policy to the insured while he was in good health, and that no liability was assumed by the company unless the same was delivered while he was in sound health. There was no evidence of unsoundness of health, except that bearing on consumption.

The court further submitted certain issues, which were responded to by the jury, as follows:

"1. Did the insured, Matthew Bryant, in his application falsely represent that he did not have consumption?" Answer: "No."

"2. Did the insured, Matthew Bryant, have consumption at the time of the delivery of the policy?" Answer: "No."

"3. Did the insured, Bryant, know that he had consumption at the time of the delivery of the policy?" Answer: "No."

"4. Did the defendant have knowledge of the fact at the delivery of the policy that the insured had consumption?" Answer: "No."

On the verdict and findings of fact by the court there was judgment for plaintiff, and defendant excepted and appealed.

*Kitchin & Allsbrook* and *G. M. T. Fountain* for plaintiff.
*Gilliam & Gilliam* for defendant.

HOKE, J., after stating the case: Our statute on insurance, in reference to the question involved in this appeal (Revisal 1905, Vol. II, sec. 4808), provides: "All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed and held representations and not warranties; nor shall any representation, unless material or fraudulent, prevent a recovery on the policy." And in *Fishblate v. Fidelity Co.,* 140 N. C., 589, the Court, in construing this section (erroneously printed in the opinion as section 4646), held as follows: "1. In an action for indemnity on an accident policy, where, on an issue involving the question as to whether the plaintiff, in representing himself to be sound physically and mentally, made a false statement on a matter material to the contract, a charge that a misrepresentation, to become material, must be as to a defect which contributes in some way to the loss for which indemnity is claimed, is erroneous.  2. Every fact untruly asserted or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of premium."

There are decisions apparently to the contrary in other jurisdictions, but, as shown in the opinion referred to, they were rendered usually, all of them as far as we have examined, in applying statutes having a different wording from ours and requiring a more restrictive interpretation.  This being the construction we have put upon our statute—and, as the law is now expressed, it is, we think, undoubtedly the correct construction—the court below properly held that the representation of the insured as to having been under the care of the physician within two years was material to the contract; and, under the facts and circumstances disclosed by the testimony, defendant has a right to insist and the case requires that there should be a determinative finding on the issue ad-

dressed to that question, and this has not been done. The Judge below takes an excerpt from the testimony of Dr. Whitehead and finds such statement to be true, but this statement is not conclusive on the issue and does not in itself embody all the facts relevant to the inquiry. It is true that the courts will hold that a prescription given by a physician in response to a casual inquiry does not amount to being under such physician's care, within the meaning of this stipulation. A prescription given after more careful examination, as an exceptional or isolated occurrence, might not be so. No more is it required that a patient should be bedridden to constitute the relationship; and if the insured, being apprehensive as to his condition, though "up and around," within the time named, consulted Dr. Whitehead or any other physician and entrusted his case to him for regular or continuous treatment, this would come within the representation, and, if false, would relieve the defendant from the obligations of the contract. Dr. Whitehead's entire statement on this subject, as shown in the record, is as follows: "I saw Matthew Bryant ten or twelve months prior to his death. He showed the history of a cough. He came back in a few days and I examined him. I asked him for a specimen of his sputum. He did not give it. I got a specimen of his sputum a few days before he left Rocky Mount. I know he had tuberculosis. I cannot swear he had it two weeks before he left Rocky Mount. He had irregular temperature, chilly sensations, cough, husky voice, etc. I thought he had tuberculosis before." Dr. Whitehead was asked, "Please state what medical attention you gave Bryant from the start to finish," to which he replied: "He called at my office five or six times within twelve months' time. I put him on creosote with strychnine and hypophosphites. Afterwards I gave him creosote and cod liver oil. This is all the medical treatment I gave him. I gave him advice as to his surroundings, diet, etc. The paper shown me (Exhibit 6) is in my handwriting." It is not clear how much of this

statement referred to conditions existing prior to or at the time of the application, but such conditions and other facts and circumstances pertinent to the inquiry should be heard and considered and the issue in some way determined before the court is in a condition to enter a proper judgment in the cause.

As the matter stands, questions raised by the pleadings and material to the inquiry have not been determined. And for this error a new trial of the cause is awarded.

New Trial.