Civil action heard on appeal from justice's court.
Plaintiff sued to recover the sum of $182 for sick benefits alleged to be due him by reason of his membership in the relief department of defendant company, and offered evidence tending to show that such an amount was due, provided that plaintiff was a rightful claimant under his contract of membership.
Defendant resisted recovery on the alleged ground that the plaintiff had made false and material representations in his application for membership and by reason of which his claim was invalid, the statements being in reference to his having syphilis at the time of application made.
On the issue, plaintiff, a witness in his own behalf, testified as follows: "I worked for the Atlantic Coast Line Railroad Company about seven years ago; again in 1911 — in boiler shop as helper to boilermaker, putting in and taking out grates. These grates I had to handle; they weighed about 200 pounds. Had to take out and set in fire-box of engines when hot, etc.; had been working six months before I was paralyzed; had been putting patch on dome; had worked two nights and two days successively; said work had to be done; this dome had to be completed. Foreman required me to continue this work continuously for two days and two nights, only taking time to eat day before I was paralyzed, which caused my sickness. I went home and slept day and night and went back to work. I worked that day and next day. When I went home I fell down paralyzed, February before last, and have been sick and housed up since then. Have not been able to work since then, and have been so I could not walk. When I went to work last time I went to see Mr. Williams, who told me to go to see Mr. Painter. He told me I had to join the relief department. Doctor examined me and (190) wrote it on paper and sent it to the shop. I joined the relief department about 1 September, 1911, and joined first class. I paid 75 cents a month, and was to get 50 cents a day for fifty-two weeks. They have refused to pay me anything."
Cross-examination: "I wrote my name in two places on paper. They refused to pay me my benefits because they said when I joined the department I had syphilis. I denied it. I have known Dr. Burnett two years, *Page 187 
and had been my doctor when I had the stroke. I had never had gonorrhoea. I went to railroad hospital. I did not then have running gonorrhoea. Dr. McCall attended me. I went to the hospital after the stroke, and have had no medical treatment since I left the hospital. I am now 30 years old, and had never been sick before the stroke. I never had syphilis in my life. I had never received the relief department benefits, and went to the hospital right after the stroke."
Redirect examination: "Dr. Burnett came to see me twice. Four or five days after, I went to the hospital and stayed one day. I saw Dr. McCall there. I was examined about six months before I went with the defendant the last time by railroad doctor to find out if I could join relief department. From that time I continued to work. I worked two days and nights without stopping except to eat."
Dr. McCall, a witness for defendant, testified: "I had charge of the hospital at South Rocky Mount. I know the plaintiff and saw and examined him. He had paralysis in right leg, arm, face, and tongue, right side, and was carried into the hospital by two men. I made examination of him physically, and he was almost completely paralyzed. There was a small scar on the genital organ of the plaintiff. He said it was not sore; his legs were also in bad shape. I gave him treatment for syphilis. He came back and showed some improvement. He had enlarged glands in his neck, which were symptoms of syphilis. In my opinion, the plaintiff's paralysis was the result of syphilis, and my opinion that plaintiff had syphilis is caused by the scar on his genital organ referred to, the enlarged glands, and the general condition followed by the paralysis, and that these symptoms indicated the (191) existence of syphilis at the time he joined the relief department.
"Hemorrhagic paralysis almost always follows a strain on the part of the patient. Syphilis is one of its prime causes. So is excessive intoxication, heavy eating, septic poison. Also happens most frequently in old age. In my opinion, plaintiff's paralysis is embolic. This happens most frequently between the ages of 20 and 30. In embolys syphilis is put down as one of the prime causes. In my opinion, embolic paralysis may be due to syphilis. It may also be due to a great many other causes."
The record states that two other doctors gave substantially similar testimony.
Dr. Bass, for plaintiff, testified: "That if the jury should find plaintiff was 28 years of age, was sitting quietly in his chair by the fire at the time he was stricken by paralysis, that he had been up to that time apparently healthy, that in his judgment the cause of his paralysis was *Page 188 
embolys; that this was not often caused by syphilis, but was more frequently caused by other things."
The following question was propounded to Dr. Bass by defendant on cross-examination, towit: "If the jury find the facts to be that plaintiff, about the time of the stroke of the paralysis, had enlargement of the post-cervical glands and of the glands of the groin, suffering with gonorrhoea, and had a scar on the head of his genital organ, then what, in your best opinion, nothing else appearing, was the primary cause of the paralysis?" The answer was: "I would suspect syphilis, but would not know it."
Defendant also introduced the application and contract of membership, made by plaintiff, containing, among others, the following statements, more directly relevant: "I certify that I am correct and temperate in my habits; that, so far as I am aware, I am now in good health, and have no injury or disease, constitutional or otherwise, except as shown on the accompanying statement made by me to the medical examiner, which statement shall constitute a part of this (192) application." And, in the application, after certain preliminary statements as to plaintiff and relations, there appears answer as to certain diseases, in groups as follows:
"Have you ever had any of the following:
Pneumonia? ..................None Syphilis? ............None Pleurisy? ...................None Stricture? ...........None Asthma? .....................None Urinary Trouble? .....None Bronchitis? .................None Appendicitis? ........None Spitting of Blood? ..........None Chronic Dyspepsia? ...None Hay Fever? ..................None Dysentery? ...........None Fits? .......................None Hemorrhoids (Piles)?..None Dizzy or Fainting Spells? ...None Rupture? .............None Sunstroke? ..................None Rheumatism? ..........None
Among other things, the court charged the jury as follows:
1st. If you shall find from the evidence that the plaintiff did have syphilis at the time of joining the relief department, and you shall further find from the evidence that the plaintiff knew he had syphilis or had reasonable grounds to believe that he had it, but falsely represented to the defendant he did not have syphilis, and thereby misled the defendant so as to induce the defendant to receive him as a member of the relief department, when it would otherwise not have received him as a member of the relief department, then you will answer the first issue `No'; but if the defendant has failed to so satisfy you, you will answer the first issue `Yes.'" *Page 189 
2nd. "If you find that the plaintiff did have syphilis at the time of joining the relief department — and the burden is on the defendant to prove to you that he did have it — and you find from the facts that he did have it, then the defendant must also prove to you, as above stated, that the plaintiff knew, at the time he made the statement, that he had the syphilis, and that he made the statement that he did not have it to deceive and fraudulently mislead the defendant so that the defendant would receive him as a member. If the defendant fails to so prove and satisfy you, you will answer the issue `Yes.'"
Defendant excepted. Verdict and judgment for plaintiff, and (193) defendant excepted and appealed.
In reference to regular contracts of insurance, section 4808 of Revisal makes provision as follows: "All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed and held representations and not warranties; nor shall any representation, unless material or fraudulent, prevent a recovery on the policy."
This section is no more than a succinct statement of the law which ordinarily obtains in the interpretation of contracts, and, construing the same in Fishblate v. Fidelity Co., 140 N.C. 589, it was held, among other things, that "Every fact untruly asserted or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of premiums." This principle was approved and again applied in Bryant v.Insurance Co., 147 N.C. 181, and in several well considered cases since that time, notably in Alexander v. Insurance Co., 150 N.C. 536, andGardner v. Insurance Co., 163 N.C. 367; 79 S.E. 809.
In Alexander's case, Associate Justice Brown, delivering the opinion, said: "The company was imposed upon, whether fraudulently or not is immaterial, by such representations, and induced to enter into the contract. In such case it has been said by our highest Court that: `Assuming that both parties acted in good faith, justice would require that the contract be canceled and the premiums returned,'" citing Insurance Co.v. Fletcher, 117 U.S. p. 519; and the same view is presented and well sustained in the recent case of Gardner v. Insurance Co., opinion byAssociate Justice Walker. While, therefore, it is the fully established *Page 190 
position as to ordinary contracts of insurance, coming within the statutory provision, there are so many conditions distinguishing this from such a contract, that we think his Honor was clearly correct in (194) his view that the contract of membership in the relief department is unaffected by the statute, and in charging the jury, as he did in effect, that in order to sever the plaintiff's membership and deprive him of its benefits it was necessary to show that the vitiating statements were knowingly false or made with a fraudulent purpose to mislead the defendant.
From a perusal of plaintiff's evidence, uncontradicted in these respects, so far as the record shows, it appears that plaintiff was required by the company to join the relief department; that he was examined by the physician of the company, who himself seems to have written out the answers in the application; that every mark or indication of syphilis, now relied upon by defendant to defeat recovery, was existent and observable at the time of examination made, and, further, that for the six months that plaintiff was employed and until he was paralyzed, after 48 hours of continuous and very heavy work, "taking only time to eat," there had been deducted from his payroll 75 cents, the monthly charge for membership, and that there is no offer to return any part of this amount. While these considerations might not, of themselves, avail to change the terms of a contract otherwise plain of meaning, they, or some of them, are relevant where interpretation is permitted, and were no doubt given consideration by the company in framing their printed form of application for membership. For it will be observed that, in this form signed by the plaintiff, the representations are not positive in terms as in usual and voluntary applications for insurance, but, as heretofore noted from the evidence, they are prefaced and affected by the statement: "I certify that I am correct and temperate in my habits; that, so far as Iam aware, I am now in good health and have no injury or disease, constitutional or otherwise, except as shown in the accompanying statement made by me to the medical examiner, which statement shall constitute a part of this application." From the language of the stipulation, with the relevant facts and circumstances attending its execution, we concur, as stated, with the court below in holding good faith on the part of the applicant is all that the company have required or should (195) reasonably require, and that the cause in this respect has been properly submitted to the jury.
There is no error, and the judgment in plaintiff's favor is affirmed.
No error. *Page 191