JOHN D. HINES v. NEW ENGLAND CASUALTY COMPANY.

(Filed 11 October, 1916.)

1. **Insurance, Health—Application—False Representations—Hernia — Sound Health—Trials—Evidence—Questions for Jury.**

   Statements made in an application for a policy of health insurance are representations and not warranties, Revisal, sec. 4808; and where the insured had hernia at the time of his application, and, without specific question as to this, stated he was in sound physical and mental condition, "no exceptions," and there is evidence tending to show that the hernia did not affect the soundness of his health, it was for the jury to determine whether his representation was false and material, upon an appropriate issue and correct instructions from the court, with the burden of proof on the plaintiff in his action on the policy.

2. **Insurance, Health—Policies—Restrictions—"Confined."**

   Where recovery upon a policy of health insurance is restricted to the duration of time the insured is "confined to his home" or "confined in a hospital," the restriction does not preclude a recovery if the insured, acting on the advice of his physician, and as a part of his treatment, should go beyond the confines of the designated places.

   BROWN, J., dissenting; WALKER, J., concurring in dissent.

APPEAL by defendant from *Connor, J.,* at February Term, 1916, of FRANKLIN.

*W. H. Yarborough, Jr., and Ben T. Holden for plaintiff.*
*William H. Ruffin for defendant.*

CLARK, C. J. This is an action to recover on a health insurance policy which contained promised indemnity for partial disability; con-

finement to the house, accompanied by disability, and confinement in a hospital, accompanied by disability. Each of these was at a different rate, and the claims made under the three classes of indemnity aggregated $382.14.

The defense was that the insured had a disease at the time of application which he did not disclose; and that the defendant was not liable under the indemnity either for confinement at the house or confinement in the hospital, for that it was not such as entitled the plaintiff to indemnity therefor, but only to partial indemnity.

The exceptions, seventeen in number, may be grouped under two heads: those which relate to the refusal of the motion to nonsuit and those which relate to the construction of the words, "within a house" and "within a hospital." As to the first exception, the plaintiff had, as it appears, at the time of the application, a slight attack of hernia. He was not asked if he had that disease. If so, his answer in the negative would have violated the contract, because the defendant company had a right to make any disease material, and if the defendant had answered untruly this would have been a misrepresentation. The statement in the application on which the defendant relies is the following: "I have never had fits or disorders of the brain. My habits of life are correct and temperate, and I am in sound condition, mentally and physically, except as follows: No exceptions."

Few people are absolutely exempt from some variation from a perfect condition, and unless such variation is specifically asked about in the application and denied, it is not matter vitiating the policy, unless the variation was serious enough to affect his "soundness" so that any one who knew the facts would say, "He is not a sound man."

The plaintiff testified that he had hernia, but that he did not suffer from it at all. Dr. Perry testified as an expert that he had examined the plaintiff two years later, in August, 1914; that he then made a physical examination of the plaintiff for life insurance; that he examined the indications of hernia and recommended the plaintiff for insurance in another company as a sound man. He further testified: "I was of the opinion that he was a sound man. . . . I would not think that the hernia would affect Mr. Hines' health to any degree." Hernia, sometimes, is a most serious defect, making the sufferer an unsound man. In other cases it is simply a slight imperfection which would not render him unsound in any respect, according to the testimony in this case. Therefore the court properly submitted to the jury the issue whether the defendant's answer, as above set out, was false or not, or whether at the time he made the application he was, in the ordinary acceptation of the words, "a sound man." It is not every ailment or indisposition or

imperfection that makes one an unsound man. There must be such a condition that there is a material departure from a sound condition. The issue was left fully and fairly to the jury as an issue of fact, and they found with the plaintiff.

The defendant has not contended that the plaintiff's representations were fraudulently made, but insists that the insurer should not be the judge of the materiality of such representations; but neither could the defendant be sole judge. The question is not whether the plaintiff had hernia, for this is not denied, but whether it was of such nature as to have rendered him an unsound man at the time of the application. The jury is the only tribunal which can settle the disputed facts, for this is an issue of fact and not a matter of law. The illness from which the plaintiff suffered subsequently, and for which he seeks to recover was an attack of rheumatism, which had no connection with, nor was there any evidence to show that it was in any way traceable to, hernia.

Revisal, 4808, provides that all statements in an application for insurance shall be held merely representations, and not warranties; and that no representations, unless fraudulent or materially affecting a risk, shall prevent a recovery. This matter was properly submitted to the jury, and they found that "the plaintiff was of sound physical condition at the time he signed the application, notwithstanding such hernia; and that his representations at the time he applied for the policy were not false and were not material to the defendant in determining whether it would issue the policy." The court instructed the jury that whether he was in sound health or not was a matter for the jury to determine upon the evidence, depending upon whether the extent of the hernia he had was such as to render him unsound or not.

The second proposition involved is whether the plaintiff has brought his case, upon the evidence, within the conditions which entitle him to recover because "confined within a house or within a hospital." The court instructed the jury that the words "confined in his home" do not mean that he must be actually confined within the four walls of his house, but it means that he was entitled to indemnity while kept in his home on account of sickness and unable to leave for any purpose not connected with his sickness. If during such illness he was able to visit friends or his place of business, he would not have been "confined." But if, acting under the directions of the physician, he called at his doctor's office, or the mere fact that he walked out under his directions, as a part of the treatment the physician was giving him, this would not require the jury to find that he was not confined in his home.

The court also instructed the jury that within the meaning of this policy a man would be "confined within a hospital" during such time

as he was therein and subject to its rules and regulations, although at times walking or driving in the grounds of the hospital, or even outside the grounds, provided such walking or driving was taken under the rules and regulations of the hospital physician as a part of the treatment; but if during that time the plaintiff was able to leave the hospital, or left it for social purposes, or for business reasons, then he would not have been "confined" within the meaning of the policy.

The court instructed the jury that the burden was on the plaintiff to satisfy them by the greater weight of the evidence that, notwithstanding the hernia, he was not suffering therefrom at the time of the application for the policy, and was in fact a sound man at that time; and, also, that the burden was upon the plaintiff to satisfy the jury that he was confined in his home and in the hospital in the manner already charged, and the burden was upon him to show the length of time; that the burden was upon the defendant to satisfy the jury that from the nature of the hernia it would have prevented it from issuing the policy if it had been informed thereof.

The charge is very full, and the jury must have understood the matters of fact left to them. We find no error of law committed during the trial.

No error.

BROWN, J., dissenting: I am of opinion that the motion to nonsuit should have been sustained, because upon the plaintiff's own testimony he is not entitled to recover. The admitted facts are that the plaintiff filed a written application with the defendant for a Plymouth Rock health policy, and in that application he represented that he had not been exposed to any contagious or infectious disease, and that at the time of the application, nor for a year past, had he had any local or other disease, except as follows: "No exceptions."

It is admitted that at the time that the plaintiff filed this application and made this representation he suffered from a disease or infirmity called "Inguinal hernia." It is a matter of common knowledge that hernia is an infirmity and a disease of which the sufferer is bound to have personal knowledge. When he made out the application for the policy of insurance, in answer to the question, he said he had no disease and no infirmity, and the space where he was expected to write the exception was filled in, "No exceptions." The defendant company had a right to assume from this application that the plaintiff was in every respect sound.

It is proven by the testimony of plaintiff's own experts, as well as the defendant's, that hernia can only be cured by an operation, and that its tendency is to grow worse and impair the health.

Medical books declare that hernia consists of a protusion, generally of the bowels, which has escaped from its natural cavity, and projects through some natural or accidental opening of the walls of the latter; as hernia of the brain, of the bowels, or of the lungs. Hernia of the abdominal viscera is a common disease or infirmity, and is commonly called rupture. The disease of which the plaintiff suffered is called "Inguinal hernia" because it is in the region of the inguen or groin.

I am of opinion that his Honor should have instructed the jury that the disease from which the plaintiff suffered, or the infirmity, whichever it is called, was such as would prevent a recovery in this action, for it is manifestly a physical unsoundness. It was error to leave the effect of the disease to the jury to determine. It was substantially permitting the jury to act as medical experts and determine whether the defendant should have made such contract. The effect of the hernia in determining the nature of the risk assumed, as well as fixing the rate of the insurance, was a matter solely for the judgment of the insurer before it entered into the contract at all. It had the right to have the facts truthfully disclosed so that its officials could determine whether the risk was one proper to be taken. It was obviously the intent of the defendant in making inquiries to learn the nature and character of any and all diseases and unsoundness that might exist, so as to decide for itself whether the plaintiff was a proper subject for insurance. It is not necessary for the plaintiff to have acted fraudulently; it is only necessary to show that he acted erroneously and stated the fact untruly.

While section 4808 of the Revisal of 1905 of North Carolina declares that all statements in an application for insurance are mere representations, and not warranties, and that no representation, unless material or fraudulent, shall prevent a recovery, yet a material misrepresentation will avoid a policy if it is calculated to influence the insurer in making the contract. *Gardner v. Ins. Co.,* 163 N. C., 367; 79 S. E., 806; *Fishblate v. Fidelity Co.,* 140 N. C., 589; 53 S. E., 354.

"Every fact which is untruly stated or wrongfully suppressed in an application for insurance must be regarded as material, if it would influence the insurer into making or refusing to make the contract."

"A false representation avoids the policy, when material, wholly without reference to its intent, unless otherwise provided by statute." And we have no statute to the contrary. *Fishblate v. Fidelity Co., supra.*

"If the company was imposed upon (whether fraudulently or not is immaterial) by such representations, and induced to enter into the contract, assuming that both parties acted in the utmost good faith, justice would require that the contract be canceled and the premiums returned." *Alexander v. Ins. Co.,* 150 N. C., 536; S. E., 432.

Under all the authorities, the suppression of the true facts, whether fraudulently or not, avoids the policy. *Bryant v. Ins. Co.*, 147 N. C., 181; *Schass v. Ins. Society*, 166 N. C., 555; Vance on Insurance, pp. 267-269.

We find a case very similar to this in 42 N. Y. Supplement, 288, *Hannah v. Life Assn.*, quoted in Kerr on Insurance, page 341, in which a warranty against local injury or infirmity is held to be broken if the insured at the time was suffering from a stricture. While hernia is not a serious illness, it is nevertheless a physical infirmity, an unsoundness, and the failure to make it known in the application voids the policy.

MR. JUSTICE WALKER concurs in this opinion.