Green v. Annuity Association.

CLARA GREEN, *Appellee*, v. THE NATIONAL ANNUITY ASSOCIATION, *Appellant*.

No. 18,380.

SYLLABUS BY THE COURT.

1. BENEFICIARY INSURANCE—*Statements in Application—Warranties*. Express warranties of the truthfulness of answers to questions were made in an application for a beneficiary certificate and the certificate recited that it was issued subject to the statements made in the application, "which are hereby warranted to be full, complete and true, and made a part of this contract." The statements referred to are held to be warranties.

2. —————— *Applicant's Health—Questions and Answers—Presence of Uremia*. The following questions and answers appear in the application:

"Q. Have.you ever had loss of consciousness? A. No.

"Q. Have you had any illness, constitutional disease or injury that has confined you to the house during the past five years? If so, give particulars. A. A year ago, yes, had uremia—Dr. J. F. Hassig, Kansas City, Kansas, pronounces him cured—I find no trace myself."

The illness referred to occurred seven months before the answers were made instead of one year, but no further question was asked concerning the date. The medical examiner of the association applied the best known tests for uremia, and then appended to the applicant's answer her own statement, "I find no trace myself." It is held that the association was sufficiently informed of the disease. The precise date being within the period covered by the question was not considered important by the association, and should be treated as superfluous. .

3. —————— *Unconsciousness a Manifestation of Uremia*. The evidence shows that unconsciousness is an ordinary incident or manifestation of uremia. Having been informed of the disease, the association is chargeable with knowledge of this incident.

4. —————— *Acceptance of Risk—Waiver—Estoppel—To Claim Breach of Warranty*. The association waived the conditions of the policy relating to previous illness from the disease referred to by accepting the risk and issuing the policy with knowledge of such illness, and is estopped from insisting upon a breach of warranty that the applicant had not had

such disease or that its ordinary manifestations had not appeared.

5. APPEAL—*Counterclaim—Not Limited to $100—Case Appealable.* In an action to recover an installment of $100 upon a beneficiary certificate, where the defendant interposed a counter-claim for the forfeiture of the certificate, and prayed for cancellation, this court has jurisdiction of an appeal by the defendant from a judgment for the plaintiff for the recovery of the installment sued for.

Appeal from Wyandotte district court, division No. 2; F. D. HUTCHINGS, judge. Opinion filed October 11, 1913. Affirmed.

*David C. Finley,* of Kansas City, Mo., and *E. A. Enright,* of Kansas City, for the appellant.

*J. E. McFadden,* and *O. Q. Claflin,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

BENSON, J.: The plaintiff sued for an installment upon a fraternal benefit certificate upon the life of her deceased husband. The defense is based upon the alleged falsity of answers in the application for the certificate and breach of conditions prescribed in the by-laws of the association upon which the certificate was issued. The defendant in its answer specifically alleges that the applicant's health became impaired by Bright's disease and that he died of that disease. Fraudulent concealment of material facts is also pleaded.

The application contained a statement that the answers to the questions "are warranties upon which the certificate will be issued or refused."

The following questions and answers appear below the statement:

"Q. Have you ever had loss of consciousness? A. No.

"Q. Have you had any illness, constitutional disease or injury that has confined you to the house during the

past five years? If so, give particulars.  A.  A year ago, yes, had, uremia—Dr. J. F. Hassig, Kansas City, Kansas, pronounces him cured—I find no trace myself."

Below the answers appears an express warranty of their truthfulness, and an agreement for forfeiture of the certificate in case of a false statement or concealment.

A by-law of the association contained the following clause:

"Should a member die or become permanently and totally disabled as a result of consumption, cancer, Bright's disease, heart disease, or other chronic or hereditary disease, within twelve months from the date of the acceptance of his or her certificate, or should such a disease develop so as to impair said member's health within twelve months from the date of the acceptance of his or her certificate  .  .  .   then in such case his or her beneficiary certificate shall become null and void and of no effect, and no person shall be entitled to receive any benefits thereunder."

It was provided in the certificate:

"That all the conditions named in this certificate are and shall be subject to the statements made in his or her medical application for membership,  .  .  . which statements are hereby warranted to be full, complete and true, and made a part of this contract, together with all the provisions contained in the Constitution and Laws of this Association."

A written acceptance of the certificate, signed by the applicant, contained a warranty that he was in sound bodily health and a waiver of benefits if the warranty was not literally true.

The certificate was issued October 8, 1910, and Mr. Green died January 24, 1911.

The word "him" was used inadvertently by the medical examiner of the association in writing down the answer to the second question copied above instead of the word "me" used by the applicant.  The statement

"I find no trace myself" is that of the examiner; the applicant said nothing to that effect.

In the month of March, 1910, Mr. Green was ill from uremia, for which he was treated by Dr. Hassig, and was at that time unconscious for five or six days. The medical examiner who wrote out the answers in the application testified that she applied the appropriate tests for the ailments referred to, and that the words "I find no trace myself" was her own statement.

Dr. Hassig, a witness for the defendant, testified that he treated Mr. Green for uremia in March, 1910; that he saw him for five or ten minutes just before his death, and that he died from uremia, which he testified was a symptom of Bright's disease. He testified that a medical examiner, by making the proper tests, could determine whether a person had any symptoms of uremia or chronic nephritis, and that the test applied by the medical examiner was one of the best known tests for uremic symptoms. Dr. Hassig also testified that he had not told Mr. Green that he was or was not cured of uremia.

The relation of uremia to Bright's disease was stated by the same witness in the following answers:

"Q. Doctor, I will ask you to state if there is any difference between Bright's disease and nephritis? A. There is n't any.

"Q. What is the medical term? A. The medical term is nephritis, and the common term Bright's disease, and it means an inflammatory condition of the kidneys.

"Q. The term 'uremia' is what? A. A symptom.

"Q. Would that be a symptom of chronic nephritis? A. Yes, and uremia is a symptom of kidney disorder. It is a fatal disease. . . .

"Q. Can a person die from a symptom? A. Uremia is a symptom of Bright's disease, and they die of uremia, so I would say that was one symptom from which a person would die."

In answer to special questions the jury found that Asa Green had uremia seven months before the application for insurance, and was treated and sent to the hospital for that disease by Dr. Hassig in March, 1910, but that his health was not impaired by Bright's disease within one year after he accepted the certificate and that he did not die of that disease.

It is insisted by the defendant that the evidence conclusively proves the impairment of health, and death, from Bright's disease, and that its request for an instruction to find for the defendant should have been granted for that reason. There was competent evidence, however, tending to prove that at the date of the application Mr. Green was not afflicted with uremia, although he had previously been treated for it. The opportunity of Dr. Hassig to determine the cause of death was limited to a hasty examination made in the last few minutes of life and his treatment and observation of the patient about seven months before. A post-mortem examination was not made. In this condition of the evidence it can not be said that death or impairment of health from Bright's disease within one year from the date of the application was conclusively shown. The fact that the medical examiner of the defendant, applying the best tests, found no trace of the disease, although her attention was called to previous medical treatment for uremia, is certainly some evidence that the disease did not exist. Dr. Hassig, and Dr. Newkirk, the medical examiner, were the only medical experts examined at the trial.

The applicant, as we have seen, stated that he had never lost consciousness, while his wife, the plaintiff, testified that he had been unconscious the previous March from Thursday to the following Wednesday. Full arguments have been made on the question whether this answer should be treated as a warranty, which being untrue avoids the policy, or whether it should be treated as a representation, which would not

have that effect if made in good faith. The plaintiff cites the opinions in *Insurance Co. v. Woods,* 54 Kan. 663, 39 Pac. 189, and *Moulor v. American Life Ins. Co.,* 111 U. S. 335, to sustain her contention that because the answers in the application are referred to as statements in the policy they should be treated as representations only. Much consideration has been given to this distinction in the adjudicated cases. In the Moulor case it appeared that the warranty expressed in the application was not carried into the policy, but the statements were there referred to as representations. The court said that this led to a doubt as to the intention, which should be resolved against the insuring company whose language must be interpreted. In this case, however, the warranty is not only made in the application, but is carried into the certificate in these words: "Which statements [referring to statements in the application] are hereby warranted to be full, complete and true, and made a part of his contract." Thus the warranties made in the application are repeated in the policy. The contract so made must be enforced unless the warranties relating to uremia and unconsciousness should be considered as waived because of his statement in the application that he "had uremia a year ago."

The applicant stated the truth concerning this previous illness, except as to the time, and it will be noticed that he was not asked to give the particular date. The question referred to the past five years, and the time named in the answer was within that period. This, with the added particular that "Dr. J. F. Hassig, of Kansas City, Kansas, pronounces him [me] cured," afforded the association the ready means of learning further particulars if desired. No purpose of evasion appears in this answer. In view of the disclosure by the applicant of illness from, and treatment for, this disease, not only within the five-year period covered by the question, but within one year, the association was put upon its guard. As the question did not call for a

precise date, it must be presumed that the time was not deemed important, if within the period named in the question. That part of the answer referring to the time of the illness was superfluous. (1 May on Insurance, 4th ed., § 166; *Dilleber v. Home Life Insurance Co.*, 69 N. Y. 256.)

The reply pleads knowledge of the company that the deceased had been ill from the disease referred to, and waiver of the conditions relating to it. This knowledge, as we have seen, is shown by his answers. Unconsciousness is an ordinary incident of the disease; it is, according to defendant's expert evidence, a manifestation of uremia. The association having been informed by the answer of the applicant of the illness from uremia, is chargeable with knowledge of its usual manifestations if they be important.

The association issued the certificate after being informed by the applicant that he had been ill from uremia within a recent period, and had been treated for that disease. Whatever may have been the cause of its disregard of the warning given in the application, it must be held to have waived any condition of forfeiture based on the effect of an ailment thus plainly stated in the application. There is a time to every purpose, "a time to keep silence and a time to speak." Having accepted this risk and issued the certificate with the information concerning this disease given in the application, the association is now estopped from insisting upon a breach of any warranty that the applicant had not been afflicted with the disease referred to, or that its ordinary manifestation of unconsciousness had not existed. (*Insurance Co. v. Davis*, 59 Kan. 521, 53 Pac. 856.)

"Insurers may, and often do, find themselves in such a position that they can not avail themselves either of a breach of warranty, or of a misrepresentation or concealment. . . . To deliver a policy with full knowledge of facts upon which its validity may be disputed,

34—90 KAN.

and then to insist upon these facts as ground of avoidance, is to attempt a fraud. This the courts will neither aid nor presume; and when the alternative is to find this, or to find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter." (2 May on Insurance, 4th ed., § 497.)

It need not be presumed in this case that a fraud was intended. It should rather be supposed that reliance was placed in the opinion of the medical examiner appended to the applicant's statement.

The theory upon which an insurance company is held to be estopped from insisting upon a defense based upon conditions of which it was aware when it accepted the risk is fully stated, with citations of many authorities, in 16 L. R. A., n. s., 1213-1222. The annotator observes, at page 1213, that the distinction between waiver and estoppel in such cases does not seem to be of importance. The two principles are properly considered together, for waiver of a condition works an estoppel against its assertion.

The volunteer statement of the applicant that Doctor Hassig had pronounced the applicant cured was not shown to be untrue, although the doctor testified that he had not told Green that he was cured, for Green did not say that he had. The pronouncement referred to by the applicant in answer to the question may have been made to his family or to others. A breach of the warranty is not shown. Warranties in such cases are strictly construed. (*Dilleber v. Home Life Insurance Co.*, 69 N. Y. 256, 257.)

An instruction informing the jury that the policy would be avoided if material statements were found to be untrue is criticised because of the limitation arising from the use of the word "material." In another place, however, the jury were told that if Green was not in sound bodily health when the application was made the policy was void, and also that it was void if he died of Bright's disease within twelve

months from the acceptance of the certificate. It is doubtful whether this reference to material statements considered in connection with the whole charge prejudiced the substantial rights of the defendant; but without deciding that question it must be held, in view of the findings of the jury and the conclusion reached upon the matters of waiver and estoppel, that the error, if any, is immaterial.

Error is also assigned upon the refusal of an instruction that impairment of health from Bright's disease within twelve months from the acceptance of the certificate made it void. Any supposed error in this ruling is made harmless by the finding of the jury that the applicant's health was not so impaired.

Reference was made in the briefs to the effect of section 4200 of the General Statutes of 1909, relating to misrepresentation in obtaining insurance, and also to the effect of section 4303 of the same compilation purporting to exempt fraternal beneficiary associations from the provisions of other insurance laws, but it is not deemed necessary to the decision of this case to determine the effect of the statutes referred to.

The plaintiff presented a question of practice, contending that as the installment claimed and the judgment rendered did not exceed $100 this court is without jurisdiction to review the judgment. (Civ. Code, § 566; *Richmond v. Brummie,* 52 Kan. 247, 34 Pac. 783.) This limitation, however, only applies to actions for the recovery of money. The defendant pleaded a forfeiture of the certificate and prayed for cancellation. The defendant was entitled to a review of the judgment which is adverse to the counterclaim.

The judgment is affirmed.