EULA B. GARDNER v. NORTH STATE MUTUAL LIFE INSURANCE COMPANY.

(Filed 5 November, 1913.)

1. Insurance, Life—"Binding Slip"—Application—False Representations.

Where an insurance company has given a "binding slip" to an applicant for insurance, it only protects the applicant against the contingency of his sickness intervening its date and the delivery of the policy, if the application for insurance is accepted, and as such slip does not insure of itself, it does not affect the right of the insurer to avail itself of all defenses it may have, under the policy, after its delivery, to avoid payment thereof by reason of material misrepresentations made in the application for it.

2. Same—Written Contracts—Parol Evidence.

After a contract of life insurance has become effective, its terms may not be contradicted so as to affect its continued validity; but it may be shown that the delivery of the policy was made upon false representations in the application therefor, as to the health of the insured and as to his not having been subjected to contagious diseases for a prior period of one year, and the like, for such matters bear upon the question as to whether the policy had ever taken effect as a contract of insurance.

3. Insurance, Life—Principal and Agent—Fraud—Waiver—Knowledge.

Where an insurer has issued a "binding slip" to the insured upon his application for a policy of life insurance, after his examination by its physician, the application providing that the policy should be delivered while the insured was in good health, and it was delivered while he was ill with a fever which resulted in his death, the question of waiver by the company of the benefit of the material false representations made in the application for the policy depends upon the knowledge by the company of the falsity of the representations and the conditions under which it was delivered, or the authority of its agent making the delivery to do so, depending upon his knowledge of the facts and circumstances at the time.

4. Insurance, Life — Application— False Representations — Contagious Diseases—"Binding Slip"—Delivery of Policy.

A representation in an application for life insurance, that the applicant has not been associated with patients having contagious diseases within the year preceding the application, is one which would reasonably influence the insurer in its decision upon the question of taking the risk and issuing the policy, and is regarded as material; and when the representation in this respect is false, a "binding slip" is issued to the insured, and thereafter the policy is delivered without knowledge of the facts and a waiver by the company of its right, the policy may be avoided by it. Revisal, sec. 4808.

5. Same—Typhoid Fever—Evidence.

Where the insured within the year preceding his application for insurance had nursed his wife during a sickness of typhoid fever, and he himself was ill with this fever, from which he afterwards died, when the policy was delivered to him, and there is evidence that a fever of this kind is contagious, and that such conditions would influence the opinion or judgment of the insurer in taking the risk and issuing the policy, it is for the jury to determine, under proper instructions from the court, whether the

GARDNER v. INSURANCE CO.

representation in the application, that the insured had not been associated within the year with one having a contagious disease, was a false and material representation and such as would invalidate the policy.

6. Insurance, Life — Misrepresentations—"Binding Slip"—Delivery of Policy.

Where a "binding slip" is given after the applicant for a life insurance policy has made his written application therefor, which application falsely represents that the applicant has not been associated with a person having a contagious disease within a year, and the policy is delivered to the insured during an illness from one of such diseases, to which he had been exposed, upon the question of a valid delivery of the policy, when the right to rely upon this misrepresentation has not been waived·by the insurer, it is competent for the jury to consider whether the agent, not knowing of the misrepresentation in the application, was led to believe that the slip was valid, and that he was accordingly bound to deliver the policy.

7. Insurance, Life — Principal and Agent — Fraud—Collusion—Imputed Knowledge.

An agent of an insurer in delivering a policy of life insurance to the insured, contrary to its terms, and in collusion with him, does not act for the insurer therein, but in fraud of his rights, and no knowledge of the fraudulent conditions existing in the transaction to the knowledge of the agent will be imputed to the principal.

8. Insurance, Life — Issues—"Binding Slip"—Misrepresentations—Verdict Set Aside—Appeal and Error.

In this action to recover upon a policy of life insurance, presenting questions upon the effect of a "binding slip" issued to the insured upon his application for the policy, and defenses upon alleged false representations made in the application, and the validity of a delivery of the policy to the insured during his last illness by the agent of the insurer, etc., it is *Held*, that the issues adopted were insufficient, and as confusion may arise on another trial by retaining any part of the verdict, the entire findings are set aside, and a new trial ordered.

APPEAL by plaintiff from ·*Cline, J.,* at April Term, 1913, of EDGECOMBE.

This is an action to recover the amount of an insurance policy, alleged to have been issued by the defendant in March, 1912, on

163—24

the life of John B. Gardner, in favor of the plaintiff, who was his wife. John B. Gardner died in March, 1912, shortly after he made his application for insurance, and the policy was delivered to him by defendant's local agent during his last illness, he being then sick with typhoid fever, which caused his death. The application contained a representation by him that he had not been intimately associated with any one suffering from any transmissible disease within the year before his death. At the time of the application and after the examination of the applicant by a physician, said agent issued what is called in the case a "binding receipt," one of the provisions of which is the following: "In the event this policy shall be approved by the medical director of the company, then the insurance applied for shall be deemed to relate back to and be in force from and after the date of this receipt, but not otherwise." And also the following provision: "That the company shall not incur any liability under this application unless the policy has been issued, delivered, and paid for while I am in good health." The issues and answers thereto by the jury will disclose the nature of the controversy and sufficiently present the question upon which the opinion of the Court rests. They are as follows:

1. Did John B. Gardner represent in his application for insurance that he had not, at the time of his application, been intimately associated with any one suffering from any transmissible disease within the past year? Answer: Yes.

2. Had said Gardner, within the year prior to his application, been intimately associated with any one suffering with any transmissible disease? Answer: Yes.

3. Was said representation material to a contract of insurance between the said Gardner and the defendant? Answer: Yes.

4. Was the said Gardner sick with typhoid fever at the time that the policy in question was left with him by B. H. Howle? Answer: Yes.

5. Did the defendant manager at Rocky Mount (V. T. Lamb) ratify the act of Howle in issuing the "binding receipt" and the delivery of the policy in pursuance thereof? Answer: Yes.

6. Did the policy in question, at the time it was left with said Gardner by said Howle, become a consummated contract of insurance between the defendant and the insured? Answer: Yes.

7. In what amount, if anything, is the defendant indebted to the plaintiff? Answer: $1,000.

The court set aside the verdict upon the sixth and seventh issues, and having given judgment for the defendant upon those which remained, the plaintiff appealed, reserving her exceptions.

*E. B. Grantham and F. S. Spruill for plaintiff.*
*Rouse & Land for defendant.*

WALKER, J. This case has not been tried upon the real and decisive issue raised by the pleadings, but we will consider this question presently and in its order. A careful review of the evidence, the course of the trial, and development of the case, the charge of the court and the issues, leads us to conclude that the jury disobeyed the instructions upon the sixth issue, and it may be clearly inferred that the trial judge set aside the verdict as to the sixth and seventh issues because of this fact. The jury were charged that, if it was found from the evidence the representation in the application mentioned in the first three issues was material, they should answer the sixth issue "No," or if they found that the agent of defendant, V. T. Lamb, did not ratify the "binding receipt" (if it was void), and that John B. Gardner was sick with typhoid fever when he received the policy, they should answer the sixth issue "No," even though they found that the representation was not material. This instruction was not followed by the jury. The false and material representation has something to do with the "binding receipt" and to the extent hereinafter indicated.

The effect of the "binding receipt" was correctly stated by *Judge Cline,* and it is thus defined in Vance on Insurance, p. 160: "The binding slip is merely a written memorandum of the most important terms of a preliminary contract of insurance, intended to give temporary protection pending the investigation of the risk by the insurer, or until the issue of a formal

policy. By intendment, it is subject to all the conditions in the policy to be issued. These informal writings are but incomplete and temporary contracts—memoranda given in aid of parol agreements. Such memoranda usually fix all the essential provisions that are variable, but they are not ordinarily intended to include all the terms of the agreement, and always look to the formal policy that is expected subsequently to issue for a complete statement of the contract made. Hence, as heretofore stated, the contract evidenced by the binding slip is subject to all the conditions of the contemplated policy, even though it may never issue, and the same is true of other informal written contracts." *Lipman v. Insurance Co.,* 121 N. Y., 454.

In what has been said or what will hereinafter be said, it must not be understood that we are deciding whether, where a "binding slip" has been delivered to the applicant, the company, in the event of his death or illness occurring subsequently, but before the acceptance of the application, can arbitrarily or even unreasonably reject it or withhold its approval or the approval of the medical director, and thereby avoid its liability, under the clause in the binding slip requiring the approval of the application by the medical director of the company before the issuance shall take effect. This course was taken in *Grier v. Insurance Co.,* 132 N. C., 542, the policies having been delivered in both cases, the only difference in the two being that in *Grier's case* there was no allegation of fraud or a false and material representation, while in this case there is. We are confining ourselves to a consideration of the false representation and its effect upon the later transactions. Nor do we pass upon the question whether the "binding slip" was actually delivered, as the jury have, by clear implication from their answer to the fifth issue, found as a fact that it was, contrary to defendant's contention that it was not delivered. When properly executed, the "binding slip" protects the applicant for insurance against the contingency of sickness intervening its date and the delivery of the policy, if the application for insurance is accepted. If the application is not accepted in the proper exercise of the company's right, and the insurance, therefore, is refused, the "binding slip" ceases *eo instanti* to have any effect. It does

not insure of itself, but is merely a provision against any illness supervening it, if there is afterwards an acceptance of the application, upon which it depends for its vitality. This view, which is the prevailing one, if there is anything to the contrary, is clearly stated by the *Chief Justice* in *Grier v. Insurance Co.,* 132 N. C., 542, where it is said that the risk of future illness, that is, after the date of the "binding receipt," is taken by the company, if it afterwards accepts the application or the insurance becomes effective, and the insurance relates back to the date of the receipt; and further, that the receipt of the premium acknowledged in the policy and the recital of the fact that the policy was delivered while the insured was in good health cannot be contradicted, in the absence of fraud or other sufficient equitable element, as they affect the validity of the contract of insurance, which cannot be impeached in this collateral way. This is sound doctrine, when confined within its proper limits, and not only is it such, but it is also eminently just. The company can show that the manual delivery of the policy was conditional, for this goes to the execution of the contract, or it may prove fraud or other equitable matter in the same way, for the purpose of showing that it never took effect as a contract, as in *Garrison v. Machine Co.,* 159 N. C., 285; *Pratt v. Chaffin,* 136 N. C., 350; *Powell v. Insurance Co.,* 153 N. C., 124; but when the policy is once delivered and becomes effective as a contract, statements therein which, if falsified, will affect its continued validity, cannot be contradicted with a view to avoid the insurance. The entire subject is fully discussed in *Grier's case, supra,* and to some extent in *Kendrick v. Insurance Co.,* 124 N. C., 315, and *Rayburn v. Casualty Co.,* 138 N. C., 379. See, also, Joyce on Insurance, sec. 64.

It became material to inquire whether the company, by its agent with competent authority, had ratified the execution of the binding receipt, as the policy itself was delivered to John B. Gardner, while he was ill with typhoid fever which resulted in his death, the application, which he signed, providing that it should be issued and delivered and the premium paid while he is in good health, in order to be binding upon the company. We will not stop to consider the question whether the evidence

was sufficient to warrant the peremptory instruction of the court, that V. T. Lamb had the requisite power to ratify, as the evidence may be changed at the next trial and present the matter in a different aspect, rendering premature and futile any discussion of it at present; and, besides, this decision may cause it to be considered in a different way. Of course, an agent must have authority in order to bind his principal. This is axiomatic. 1 Joyce on Insurance, sec. 64.

But, as we have intimated, the underlying question in this case, which affects both what is called the "binding slip or receipt" and the validity of the policy, is, whether the company, by itself or its duly authorized agent, has waived the benefit of the false representation made in the application, with full knowledge of the facts. If the representation made in the application was false and material, and the jury so found, and the company was ignorant of its falsity, it vitiates the so-called binding receipt and the policy, unless the company has in some way waived it by its conduct and with full knowledge of the facts. "A false representation avoids a contract of insurance when material, and wholly without reference to the intent with which it is made, unless it is otherwise provided by statute." Vance on Insurance, p. 269. We need not inquire whether this rule is too broadly stated by Mr. Vance, as it applies, with the meaning intended by him, to the facts of this case, and it has been stated by this Court substantially in the same terms. Every fact which is untruly stated or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally and reasonably influence the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium. 16 Am. and Eng. Enc. of Law (2 Ed.), 933; Vance on Insurance, 284. This definition was adopted by us in *Fishblate v. Fidelity Co.,* 140 N. C., 589, and has since been approved several times, and is also the definition of other courts. *Bryant v. Insurance Co.,* 147 N. C., 181; *Alexander v.* Insurance Co., 150 N. C., 536; *Annuity Co. v. Forrest,* 152 N. C., 621; *A. L. Insurance Co. v. Conway,* 75 S. E. (Ga.), 915; *Maddox v. Insurance Co.,* 65 S. E., 789; *Tally v. Insur-*

*ance Co.,* 111 Va., 778; *Penn. M. Life Insurance Co. v. N. S. and Trust Co.,* 38 L. R. A. (N. S.), 33; 3 Cooley's Briefs on Insurance, p. 1953; Vance on Insurance, pp. 267, 269:

It may be stated as a general rule that where, in an application for insurance, a fact is specifically inquired about, or the question is so framed as to call for a true statement of the fact, or to elicit the information desired, reason and justice alike demand that there should be a fair and full disclosure of the fact, or at least a substantial one. 3 Cooley's Briefs on Insurance, p. 2009 (d).

Our case is not essentially different from *Alexander v. Insurance Co., supra,* in which this Court said: "The company was imposed upon (whether fraudulently or not is immaterial) by such representation, and induced to enter into the contract. In such case it has been said by the highest Court that, 'Assuming that both parties acted in good faith, justice would require that the contract be canceled and premiums returned.' *Insurance Co. v. Fletcher,* 117 U. S., 519," citing *Bryant v. Insurance Co., supra,* as decisive of the question. Our statute, Revisal of 1905, sec. 4808, affirms this view, for while it declares that all statements in an application for insurance shall be construed as representations merely, and not as warranties, it further provides that no representation, unless material *or* fraudulent, shall prevent a recovery, the meaning of which plainly is, that a material representation shall avoid the policy if it is also false and calculated to influence the company, if without notice of its falsity, in making the contract at all, or in estimating the degree and character of the risk, or in fixing the premium. *Bryant v. Insurance Co., supra.* Our case is well within this rule.

It is not necessary, as said in *Fishblate's case,* "that the act or conduct of the insured, which was represented by him in the application, should have contributed in some way or degree to the loss or damage, for which the indemnity is claimed." Whether it was material depends upon how, if at all, it would have influenced the company in the respect we have just stated. The determining factor, therefore, in such case is, whether the answer would have influenced the company in deciding for

GARDNER *v.* INSURANCE CO.

itself, and in its own interest, the important question of accepting the risk, and what rate of premium should be charged. The questions generally are framed with a view to estimating upon the longevity of the applicant, and any answer calculated to mislead the company in regard thereto should be considered as material. There are some contingencies that cannot be provided against, but the company is entitled to have a fair and honest answer to every question, which will enable it to exercise its judgment intelligently and to have the necessary information as a basis upon which to make its calculations, although its best deduction therefrom may only approximate the actual result in the particular case. 3 Cooley's Briefs on Law of Insurance, pp. 1952, 1953; *Insurance Co. v. Conway*, 11 Ga. Appeals, 557. The applicant is required to act in the utmost faith in giving the information. *Insurance Co. v. Conway, supra.* In life insurance, it is important for the company to know the individual history and characteristics of the applicant, his idiosyncrasies, or the peculiarities of his mental and physical constitution or temperament, and his environment at the time of his application. In no other way could the risk or hazard be well determined, or the premium fixed. Is he weak in body or in mind, and if so, to what extent and in what particular way, and what are his inherited traits or the mental and physical characteristics of his progenitors? The inquiry must be not only individual, but ancestral, and the investigation searching as to his past life and future intentions, as experience has shown, in order to make anything like a reliable estimate of the risk to be incurred. And his habits and surroundings are also to be known, considered, and weighed. Has he been exposed to any contagious, infectious, or transmissible disease, is a perfectly legitimate inquiry. Does he propose to change his residence, so that his exposure to climatic or other diseases will be greater and the hazard correspondingly increased? These and many other questions of like kind any prudent man engaged in the business of life insurance would be more than likely to ask, and the answers to them would surely tend to shape the judgment of the underwriter and influence his decision in regard to the risk. Any insurance company that

would issue a policy or contract for insurance upon any other basis and without proper inquiry would be so reckless as to forfeit the confidence of the public.

However it may be generally, in our case it appears that the applicant had been intimately associated with his wife, who was afflicted with typhoid fever, requiring seventeen medical visits for treatment. He nursed his wife and a child in the same house afflicted with the same disease, throughout their illness, and shortly afterwards was himself attacked by it and died. There was ample evidence to show that typhoid fever is transmissible from one person to another in various ways—by flies and other insects, drinking-water, milk and other substances of a like kind, when infected by flies, which carry the fatal germs from the stools or excreta of the typhoid patient. It was testified that when there is typhoid fever in a house or on the premises, it presents a very dangerous situation for those who occupy them or who visit there, as they are thereby brought in close contact with the germ-laden substances and are more exposed to infection. A person physically able to resist or throw off the disease may escape, or he may be so fortunate as not to become the victim of the germ bearers, but he is nevertheless in dangerous surroundings, where the chances of infection are greater than if he were more remote from the premises of the patient. There was also evidence that the application for insurance would have been rejected had the question been correctly answered. John B. Gardner knew, or rather must have known, at the time he answered the question, that he had very recently been intimately associated with his sick wife as her nurse during her severe illness, and the company, if ignorant of the fact, was misled by his answer as to the truth of the matter. Under the charge of the court, which is sustained by our decisions, and was in accordance with the established doctrine, the jury found that the representation was false and was also material, and there was evidence to support the finding. This being so, the question is, Did the defendant, with knowledge of the facts by itself or its agent, waive its right to insist upon this false statement, and, thereby, ratify the "binding slip"? If it did, then the slip being valid, the company took

the risk of the illness of the assured occurring subsequent to its date, and the policy was rightfully delivered by defendant's agent to Gardner, although he was sick at the time. *Grier v. Insurance Co., supra.* If it did not thus waive its right, the next question will be, Did the agent deliver the policy, not knowing that the statement in the application was false, and being led thereby to believe that the slip was valid and, of itself, bound him to deliver the policy, and was he influenced by this fact to deliver the policy? This all relates to the valid execution of the policy, and does not contradict or vary its terms.

It will not be denied, we should think, that there can be no legal waiver of a right without a knowledge of the right which is claimed to have been relinquished. The doctrine is well stated in 29 Am. and Eng. Enc. of Law, at p. 1093: "There can be no waiver, unless the person against whom it is claimed had full knowledge of his rights and of facts which will enable him to take effectual action for their enforcement. No one can acquiesce in a wrong while ignorant that it has been committed, and that the effect of his action will be to confirm it." If there was any fraudulent or collusive agreement between the agent and Gardner for the delivery of the policy in disregard of the company's rights, it would avoid the entire transaction and defeat plaintiff's recovery, for fraud vitiates everything. In such case, the agent would be representing himself, and not his principal, and his authority to speak or act for him would cease, as the party claiming the insurance and who assisted in the fraud or was *particeps criminis* cannot take advantage of his own or the agent's wrong. "A contract made by an agent under the influence of bribery (or fraud or collusion) or one made to the knowledge of the other party, in fraud of the principal, is voidable by the latter." Tiffany on Agency, pp. 229-326; *Sprinkle v. Indemnity Co.,* 124 N. C., 405. But the other party (here Gardner) must have had knowledge of the principal's right and that the agent was defrauding his principal, or was disobeying instructions, or acting without the scope of his employment, or he must have colluded with him and thereby obtained something belonging to the principal without being legally entitled thereto. "An agent cannot be allowed to put

himself into a position in which his interest and his duty will be in conflict, and if a person who contracts with an agent so deals with him as to give the agent an interest against the principal, the latter, on discovering the fact, may rescind the contract, notwithstanding that it was within the scope of the agent's authority. Thus, a gratuity given, or promise of commission or reward made to an agent for the purpose of influencing the execution of the agency, vitiates a contract subsequently made by him, as being presumptively made under that influence." Tiffany on Agency, p. 229. Under such circumstances of fraud or collusion, notice to the faithless agent of Gardner's illness or any other vital fact would not be imputed to the company, his defrauded principal. Tiffany on Agency, pp. 262-3; *Sprinkle v. Indemnity Co.,* 124 N. C., 405; *Bank v. Burgwyn,* 110 N. C., 267; *Stanford v. Grocery Co.,* 143 N. C., 419. The Sprinkle decision is very much in point, both as to the fraud of the agent and its effect upon the question of notice to the principal of his faithless conduct. The case, in this aspect, may be submitted to the jury, if the defendant so desires and tenders a proper issue for the purpose.

We can now see how important it is to have additional issues or a modification of the present ones, except the first four of them, for in the light of the entire case—pleadings, evidence, charge and verdict—neither the plaintiff nor the defendant was entitled to a judgment, the verdict having fallen short of presenting all the essential facts, and the Court, therefore, being unable to determine the rights of the parties and pronounce judgment. As some confusion may arise if we retain any part of the verdict, for instance, as to the first four issues, we will set aside the entire finding and let the parties begin anew, which will be in the nature of a repleader, though not technically so, and it is so ordered.

New trial.