## Reserve Loan Life Insurance Company v. Boreing.

(Decided March 5, 1914.)

## Appeal from Laurel Circuit Court.

1.  Insurance, Life—Action on Policy—Defense—Burden of Proof.—
    Where it is admitted that the applicant for insurance was accepted,
    the premium paid, and the policy issued and delivered to the ap-
    plicant, and that his death took place while the policy was in force,
    the burden is on the insurance company to establish the defense
    that certain answers contained in the application were false and
    material.

2.  Evidence—Rebuttal—What Constitutes.—Rebuttal evidence is not
    necessarily confined to proving or disproving facts testified to by
    the witnesses on the other side, but is none the less rebuttal evi-
    dence if it tends to overcome the legal effect of the evidence for
    the other side.

3.  Insurance, Life—Application—Falsity of Answers—Defense—Es-
    toppel—Exclusion of Evidence—Not Prejudicial.—Where in an
    action on an insurance policy the insurance company defends on
    the ground of the falsity and materiality of certain answers in the
    application with reference to the insured's habits of intoxication,
    and the evidence shows that the company, instead of relying on
    the truthfulness of the answers in the application, procured a con-
    fidential report on the applicant, and was thus apprised of all the
    facts upon which it seeks to defeat the policy, it will be estopped
    to rely on the falsity of the answers contained in the application,
    and it is not prejudicial to exclude evidence offered in rebuttal
    tending to show that after the application was written up the
    insured read it over and pronounced it all right, and after the
    policy was issued it was submitted to the insured and he pro-
    nounced it all right.

GEO. A. BROCK, G. A. DEITCH and GRUBBS & GRUBBS for
appellant.

WILLIAMS & JOHNSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER.—Affirming.

On December 5, 1911, the Reserve Loan Life Insur-
ance Company issued to James M. Boreing a policy in-
suring his life in favor of his wife, Julia N. Boreing, for
the sum of $5,000. James M. Boreing died, and the pay-
ment of the amount of the insurance being refused, plain-
tiff, Julia N. Boreing, brought this action against the
company to recover on the policy. The jury found for
the plaintiff, and judgment was entered accordingly. De-
fendant appeals.

The petition alleges the issuance of the policy, the payment of the premium, the death of the insured, and the refusal of the company to pay.

The answer sets out certain questions and answers contained in the application for the policy, and alleges the materiality and falsity of the answers, the company's reliance on them, and the fact that the policy would not have been issued had the truth been known. The questions and answers specified in the answer are as follows:

"5. Are you now in sound health?" "A. Yes." "14. Have you ever had any of the following diseases? Pain or distress about the heart?" "A. No." "Dyspepsia or indigestion?" "A. No." "17. Except as you have previously stated, for what have you ever consulted a physician or surgeon?" "A. None." "21. Have you ever been an inmate of any sanitarium, asylum or hospital? If so, when, how long and for what?" "A. No." "24. What are your present habits in the use of spirits, wines and malt liquors?" "A. A drink occasionally." "25. Have you ever used alcoholic or other stimulants to excess?" "A. No." "26. Have you ever been treated for the opium, cocaine, liquor or tobacco habit?" "A. No."

By reply, plaintiff denied the allegations of the answer, and also pleaded that the questions and answers specified in the answer were not propounded to or made by the insured, and that the company, at the time of taking the application and issuing the policy, had full knowledge of the fact that the insured frequently got intoxicated.

By rejoinder, the company pleaded estoppel, based on the allegation that after the application was filled out it was read over by the insured, and that he stated to one of the company's agents that the answers were correct, and that upon the delivery of the policy he again read the application and stated that the answers were correct.

The issues were completed by a surrejoinder.

The trial court held that the defendant had the burden of proof. Dr. E. G. Dick testified that he was in charge of the Keeley Institute at Crab Orchard, Kentucky. James M. Boreing was an inmate of that institution from October 15, 1899, to November 12, 1899. He returned to the institution April 1, 1900, and was discharged April 30, 1900. On both of these occasions he was treated for inebriety. W. A. Wickersham, who represented the de-

fendant as its agent at London, at the time the policy was issued, testified that the insured signed no other application except the one attached to the policy, and that the policy was delivered in pursuance of that application. Dr. J. B. Mason testified that he treated Boreing in 1902 for pneumonia, and again in 1910, when he was suffering from the effects of alcoholism. G. B. Angel, J. C. Mullins and W. L. Brown testified to having seen Boreing intoxicated within the last few years. The latter stated that Boreing would occasionally get on a spree, and that it would generally last for a day or two. Oftentimes he would go for several months without taking a drink at all.

Dr. John L. Larway, the medical director of the company, testified that in approving the policy in question he relied on the application, and statements of a confidential report on Boreing. Had he known that Boreing had taken the Keeley cure he would not have passed the application. The confidential report was to the effect that Boreing got intoxicated from four to six times a year, and that the spree usually lasted about two days. His appearance as to health was average.

Mr. Deitch, general counsel for the company, testified that no insurance company would insure a man who had taken the Keeley cure and returned to drink.

For plaintiff A. O. Owens, who was the general agent of the company in Kentucky, and who wrote the insurance, testified that the questions 17 to 26 in the application were not asked of Boreing nor answered by him. They were written over at a drug store after Boreing had signed the application and left. He further testified that he knew of Boreing's habits as to the use of intoxicants when he took his application, and that most of the insurance companies would insure a man who drank or who had taken the Keeley cure ten years before.

In rebuttal, Dr. J. I. Smith, the examining physician, testified that Owens was not present all the time when the application was being filled out. The disputed questions were all asked of Boreing, and he made the answers contained in the application. The answers were filled out before he signed the application. The part that he filled in himself consisted of answers to questions which witness had to answer individually. On cross-examination witness admitted that he knew about Boreing's drinking, but had never seen him when he was not on his feet, and did not know how much he drank.

Defendant then offered to prove by W. A. Wickersham, the local agent of the company, that after the application was written up, the insured read it over and pronounced it all right, and that after the policy was issued and handed to him for inspection, the insured took the policy, turned it over, and witness presumed that he read it, as he had it long enough, and then pronounced it all right. This evidence was excluded by the trial court on the ground that it was evidence in chief, and not in rebuttal, inasmuch as no witness for the plaintiff testified that the occurrence proposed to be given in evidence did or did not take place.

(1) The court did not err in placing the burden of proof on the company. Its defense was predicated on the falsity and materiality of the answers contained in the application. Where it is admitted that the applicant for the insurance was accepted, the premium paid, and the policy issued and delivered to the applicant, and his death takes place while the policy is in force, the burden is on the insurance company to establish its defense. Columbia Life Insurance Co. v. Tousey, 152 Ky., 447; New York Life Insurance Co. v. Graham, 63 Ky., 506; Gardner v. Continental Insurance Co., 125 Ky., 471.

(2) But it is insisted that the court erred to the prejudice of the defendant by excluding from the jury the evidence proposed to be given by the witness Wickersham. Under our practice the party upon whom rests the burden of proof in the whole action must first produce his evidence; the adverse party will then produce his evidence; the parties will then be confined to rebutting evidence unless the court, for good reason, in the furtherance of justice, permit them to offer evidence in chief. Civil Code, Section 317, sub-sections 3 and 4. If the offered evidence was evidence in chief, then it was within the sound discretion of the court to exclude it. On the other hand, if it was evidence in rebuttal, it should have been admitted. The trial court seems to have acted on the theory that it was not rebuttal evidence, merely because no witness for plaintiff had testified that the insured either did or did not read the application after he signed it, or the policy after it was delivered, and pronounce them all right. In our opinion, this is too narrow a view of rebuttal evidence. Such evidence is not necessarily confined to proving or disproving facts testified to by the witnesses on the other side, but is none the less rebuttal evidence if it tends to counteract or overcome

the legal effect of the evidence for the other side.   As
before stated, the company defended on the ground that
the answers contained in the application were false and
material.  Plaintiff denied that the answers were either
false or material, and further pleaded that the answers
were not made by the insured, and that the company had
full knowledge of the habits of the insured.   In other
words, plaintiff relied on three grounds to overcome the
company's defense.   Though these grounds were plead- ·
ed, the company was not bound to anticipate that each
ground would be supported by evidence.   It was not,
therefore, required to present in chief evidence which
would only become necessary in the event of certain
evidence by plaintiff.   When plaintiff offered evidence
tending to show that the answers were not made by the
insured, it was then competent to overcome the effect of
this evidence by the evidence which was offered and re-
fused.

But the question still remains: Was the refusal of
the offered evidence prejudicial under the facts of this
case?  Here the local physician who represented the com-
pany admitted that if there was one thing he knew about
the questions and answers in the application it concerned
the drinking habits of the insured.   Not only so, but the
medical director, whose duties it was to pass each appli-
cation before the policy was issued, obtained a confiden-
tial report to the effect that the insured got intoxicated
from four to six times a year, and usually remained on
sprees about two days.   Aside from the fact that the in-
sured was in the Keeley Institute on two occasions eleven
or twelve years before the issual of the policy, the evi- ·
dence heard on the trial did not conduce to show any,
greater intoxication than the medical director was ap-
prised of at the time the policy was issued.   The fact
that the insured was treated for inebriety at the Keeley
Institute eleven or twelve years before the policy was is-
sued bore only on the extent of his habits of intoxication.
It is the insured's habits with reference to drink, and not
merely his treatment for those habits, that affect the
risk.   These habits being known to the company when
the risk was incurred, we are unable to see upon what
principle of fairness or justice the company can issue
a policy and accept the premium, and then claim a re-
lease from liability on the ground that the answers in
the application were false and material and that the
company would not have issued the policy if the truth had

been known. Here the company might have relied on the truthfulness of the answers contained in the application. It did not do so. It sought information from another source. That information brought home to it knowledge of the very facts on which it is now sought to defeat the policy. Instead of rejecting the application it issued the policy and accepted the premium. Under these circumstances, it is estopped to rely on the falsity of the answers contained in the application. Masonic Life Insurance Co. v. Robinson, 149 Ky., 80; 147 S. W., 882; 41 L. R. A., 505. In view of the foregoing facts, about which there is no controversy, we conclude that the rejection of the evidence proposed to be given by the agent Wickersham was not prejudicial to the substantial rights of the defendant.

There being no complaint of the instructions, and the evidence being sufficient to sustain the verdict, and finding no error in the record prejudicial to the substantial rights of the appellant, it follows that the judgment should be affirmed, and it is so ordered.