**PROVIDENT LIFE & ACCIDENT INS. CO.**
**v. HAWLEY et al.**
No. 4815.

Circuit Court of Appeals, Fourth Circuit.
Nov. 10, 1941.

John M. Robinson, of Charlotte, N. C. (Hunter M. Jones, of Charlotte, N. C., and John A. Chambliss, of Chattanooga, Tenn., on the brief), for appellant.

Howard B. Arbuckle, Jr., and Paul C. Whitlock, both of Charlotte, N. C. (Whitlock, Dockery & Shaw, of Charlotte, N. C., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This is a suit for the cancellation of two policies of life insurance, and the decision turns upon the weight to be given to certain material misrepresentations made by the insured in his application for the policies. The falsity and materiality of the statements of fact are admitted, but the suit is defended on the grounds that the insurer waived the misrepresentations and did not rely upon them when issuing the policies.

Two policies upon the life of F. O. Hawley of Charlotte, North Carolina for $5,000 and $10,000 respectively were issued on April 19, 1939 by Provident Life and Accident Insurance Company on the same application. The insured died on October 30, 1939. The proofs of death showed that the immediate cause of death was a puncture of the esophagus which occurred when physicians tried to remove a piece of beef from his throat, and that contributing causes were moderate cardio vascular disease with high blood pressure. After an investigation by the company, suit for cancellation was brought within the contestable period of one year.

The insured was 58 years old when he applied for the insurance on March 29, 1939. He stated in his application that he was in good health, so far as he knew or believed; that he had not consulted a physician for any cause in the past ten years; that no physician had expressed an unfavorable opinion as to his health; that he had had a tonsillectomy in 1928, and that he had never been under observation, care or treatment in any hospital, sanitarium, asylum or similar institution. In answer to the inquiry whether he then had or had ever had, among other named diseases, rheumatism or disease of the heart or any other disease or injury, and if so to give details, dates, &c., he said that he had had rheumatic fever about 1925, was sick about six weeks, and no complications followed.

The truth was that during the ten years previous to the application, the insured had repeatedly consulted Dr. Lucius G. Gage, a physician in Charlotte, with reference to arthritis and high blood pressure; and that on May 21, 1934, a cardiogram of his heart indicated slight myocardial damage, although on August 15, 1939 an examination of the heart did not disclose organic trouble or defect. The insured had also consulted Dr. E. A. Purdum of Hot Springs, Arkansas, on three occasions, namely, between February 25 and March 16, 1928, between November 23 and December 1, 1930, and between February 24 and March 25, 1939. On the first occasion it was found that the insured was suffering from moderate arthritis; on the second occasion that he was suffering from arthritis and a heavy infection of trichomonas, that is, an infection of the intestinal tract, of which the insured was informed, and on the third occasion that he was suffering from rheumatism, high blood pressure, trichomonas and mitral regurgitation, that is, insufficiency of the mitral valve of the heart. On the occasion of the last visit to Hot Springs the trichomonas yielded to treatment, but the insured was advised to have examinations made from time to time and to continue the treatment if there was evidence of a re-

currence of the infection. He was also informed that the examination of his heart had disclosed a leaky valve. During his stay at Hot Springs on this occasion he visited the office of his physician, twenty times and was charged $135 for the examinations and treatment. His last visit to his physician was on March 25, 1939. His application for insurance was made, as we have seen, on March 29, 1939, shortly after his return to his home in Charlotte.

At the trial of the case the District Judge upon his own initiative, impaneled an advisory jury, in conformity with Rule 39 (c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Six issues were framed for submission to the jury. At the conclusion of the evidence the judge answered the first three issues adversely to the defendant, finding in substance that the insured had made the false statements in the application as above described, and that these statements were material to the risk. This ruling was in accord with the undisputed facts, and no objection to it was made by the executors of the insured's estate who defended the case. The judge, however, submitted to the jury the remaining issues of non-reliance and waiver, and the jury found (1) that the Insurance Company did not issue the policy in reliance upon the truth of the statements in the application; (2) that the Insurance Company waived the misrepresentations that the applicant had made; and (3) that the Insurance Company was indebted to the estate of the insured in the sum of $15,000.

The crucial question in the case is whether the evidence justified the findings of the jury and the judgment based thereon which denied cancellation of the policies and awarded the face amounts thereof to the estate of the insured. The defenses to the suit were based on the circumstance that in the interval between the receipt of the application and the issuance of the policy, the Insurance Company made certain inquiries in respect to the insurability of the applicant, and received certain reports now to be described. The first report was made to the company by its Charlotte office, which recommended the issuance of the policies, subject to medical examination. The report contained the following statements:

"Mr. Hawley presents a strong and robust appearance, is very active and energetic for his age, and we learn of no serious illness or injury that he has had in the past. However, during the past five or six years he has complained at times of having mild attacks of rheumatism. In making this report inspector contacted two reputable physicians who have examined the applicant in the past, one of these physicians having given him a thorough examination about two years ago. These physicians state that they do not know of anything organically wrong with the applicant other than the fact that he has complained on a few occasions of having rheumatism. He is not known to have ever been confined or received treatment for this minor rheumatic condition and it is not regarded as anything serious. Around Feb. 22 or 23, 1939, the applicant went to Hot Springs, Ark., telling informants that the change would do him good. He remained there until only about a week ago. Close associates state that the applicant appears to be in excellent health at present, and the subject has told informants that he has felt excellent since making the trip to Hot Springs. On one or two other occasions in the past he has made similar trips to Hot Springs, but as stated before we learn of no serious illness that the applicant has ever had, and he is generally regarded as a healthy specimen for his age. His father and mother lived to be rather elderly people and we learn of no unfavorable family traits."

* * *

"Mr. Hawley has never been a drinking man. Prior to about fifteen or eighteen years ago he was known to take an infrequent social drink or two with his friends, but informants state that they do not know of him having even taken a drink in about fifteen years and he is known as a total abstainer and does not keep liquor at his home."

The second report consisted of the answers of Dr. Brodie C. Nalle of Charlotte in response to inquiries on a printed form sent to him by the medical director of the Insurance Company. The report showed that Dr. Nalle had not seen the applicant professionally in several years; that the applicant had consulted him in 1925 for arthritis, from which the recovery was complete; that similar attacks before or since had not been severe; that the insured had also consulted Dr. Purdum in Hot Springs, Arkansas; that the arthritis had been relieved by a tonsillectomy and attention to health; and that the applicant had been treated for a bad cold at Hot Springs, Arkansas, in March 1939.

The third report was that of the company's physician who examined the applicant at the time of his application. Nothing was disclosed therein that would indicate that the applicant had made false statements in his application, and he was unreservedly recommended as a first class risk.

Obviously these reports presented to the Insurance Company a picture of a vigorous and healthy man, and the only information given in respect to physical defects was that the applicant had had attacks of rheumatism or arthritis in the past five or six years, and that he had visited Hot Springs, Arkansas, for treatment on two or three occasions, the most recent a few days before his application, and had returned in apparent good health. In no way was the company warned that the applicant had suffered for some years from high blood pressure and trichomonas, and that he had very recently been informed by a competent medical expert that he was afflicted with a valvular disease of the heart.

█ A comparison of the extent and scope of the information received by the Insurance Company in these three reports with the representations of the applicant as to his physical condition is essential in considering the contention that the company waived the false statements made by the insured. It is the law in North Carolina and elsewhere that waiver implies a knowledge of the essential facts giving rise to the rights that are relinquished. Thus in Gardner v. North State Mut. Life Insurance Co., 163 N.C. 367, 79 S.E. 806, 48 L.R.A.,N.S., 714, Ann.Cas.1915B, 652, the Supreme Court of North Carolina said:

"* * * If the representation made in the application was false and material, and the jury so found, and the company was ignorant of its falsity, it vitiates the so-called binding receipt and the policy, unless the company has in some way waived it by its conduct, and with full knowledge of the facts. * * *" 163 N.C. at page 374, 79 S.E. at page 809, 48 L.R.A.,N.S., 714, Ann. Cas.1915B, 652.

"It may be stated as a general rule that where, in an application for insurance, a fact is specifically inquired about, or the question is so framed as to call for a true statement of the fact, or to elicit the information desired, reason and justice alike demand that there should be a fair and full disclosure of the fact, or at least a substantial one." 163 N.C. at page 375, 79 S.E.

at page 809, 48 L.R.A.,N.S., 714, Ann.Cas. 1915B, 652.

"It will not be denied, we should think, that there can be no legal waiver of a right without a knowledge of the right which is claimed to have been relinquished. The doctrine is well stated in 29 Am. & Eng. Enc. of Law at p. 1093: 'There can be no waiver, unless the person against whom it is claimed had full knowledge of his rights and of facts which will enable him to take effectual action for their enforcement. No one can acquiesce in a wrong while ignorant that it has been committed, and that the effect of his action will be to confirm it.'" 163 N.C. at page 378, 79 S.E. at page 810, 48 L.R.A.,N.S., 714, Ann.Cas. 1915B, 652.

See, also, Combs v. Equitable Life Ins. Co., 4 Cir., 120 F.2d 432, 438; Dossett v. Franklin Life Ins. Co., Tex.Com.App., 276 S.W. 1097, 1099.

█ It is manifest that the Insurance Company in the pending case did not have knowledge of the insured's condition coextensive with his representations. While the company knew, notwithstanding his statements to the contrary, that he had consulted physicians in the ten years prior to his application, it had no knowledge that for years he had suffered from trichomonas infection, or that only a few days before his application he had been told by his physician at Hot Springs that he had a defective and abnormal heart. The conditions of an ordinary waiver were therefore not met. The appellees, however, insist that although the knowledge acquired by the company may not have been full and complete, yet it was sufficient to put the company upon inquiry from which the whole extent of the bad health of the applicant could have been ascertained. Illustrations are found in the decided cases in which the insurer, although not in possession of full information, had knowledge of facts of such a character as to suggest to a prudent person the need for further investigation into the insurability of the applicant. See Dossett v. Franklin Life Ins. Co., Tex.Com.App., 276 S.W. 1097; Green v. National Annuity Ass'n, 90 Kan. 523, 135 P. 586; Pellon v. Connecticut Gen. Life Ins. Co., 105 Vt. 508, 168 A. 701; Columbian Nat. Life Ins. Co. v. Rodgers, 10 Cir., 116 F.2d 705. But, on the other hand, it has been frequently held that the mere fact that the insurer has knowledge that some of the statements in an application are incorrect does not of itself

put the insurer on inquiry, and charge it with knowledge of all the facts that an inquiry would disclose. Jefferson Standard Life Ins. Co. v. Stevenson, 5 Cir., 70 F.2d 72; Stewart v. American Life Ins. Co., 10 Cir., 89 F.2d 743; Columbian Nat. Life Ins. Co. v. Rodgers, 10 Cir., 116 F.2d 705; Great Northern Life Ins. Co. v. Vince, 6 Cir., 118 F.2d 232; Maggini v. West Coast Life Ins. Co., 136 Cal.App. 472, 29 P.2d 263; Martinson v. Prudential Ins. Co., 236 Wis. 110, 294 N.W. 525. In each instance the character of the information possessed by the insurer determines to which class the case belongs. In our opinion, the case at bar belongs in the second class. The information that the insured, apparently in general good health, had suffered to some extent from rheumatism or arthritis, and had consulted physicians in years past, and had recently visited Hot Springs for treatment, returning in an improved condition, would not suggest that he was in such a serious condition as to require further investigation. From these facts the insurer would have no occasion to suspect that physicians had very recently found physical defects in the applicant indicative of an uninsurable condition. The more reasonable inference was that the only previous sicknesses disclosed in the application, namely, the rheumatic attack in 1925 and the tonsillectomy in 1928, had not seriously affected the applicant's health. In short, the facts were not sufficient to put the Insurance Company upon further inquiry.

■ The same considerations dispose of the kindred contention that the Insurance Company is not entitled to cancellation for the reason that it did not actually rely upon the false statements in the application. The appellees invoke the well established rule illustrated in Stafford v. Newsom, 31 N.C. 507, and many other North Carolina cases, that a party to a contract cannot repudiate his obligation on the ground that he was induced by false representations to assume it, if he makes an investigation for himself before acting and ascertains that the representations are false; for in such case, he is not misled by the other's fraud but acts in reliance upon his own independent judgment. That rule, however, is not applicable here. It is true that the insurer made an independent investigation and discovered that the applicant had consulted physicians for mild attacks of rheumatism or arthritis

more frequently than his application disclosed; but these circumstances constituted no substantial evidence that the insurer had learned the whole truth about the applicant and did not rely upon such sweeping statements of his as that no physician had expressed an unfavorable opinion as to his health, and that he had never had a disease of the heart. In order to appreciate the weakness of the appellees' argument, one has only to reflect upon the certain rejection of the application by the Insurance Company had it been told of the diagnosis of Dr. Purdum at Hot Springs in March of 1939. Nor do the cases upon which the appellees rely support their position; for example, in Reserve Loan Life Ins. Co. v. Boreing, 157 Ky. 730, 163 S.W. 1085, 1089, the court said that the information obtained by the insurer "brought home to it the knowledge of the very facts upon which it is now sought to defeat the policy". That situation is not found in the pending case.

■ The doctrine which is applicable here is thus stated in Restatement, Contracts, Section 479: "Where fraud or misrepresentation is material, with reference to a transaction subsequently entered into by a person deceived thereby, it is assumed in the absence of facts showing the contrary, that it was induced by the fraud or misrepresentation." See, also, Stewart v. American Life Ins. Co., 10 Cir., 89 F.2d 743, 747. There were no facts in the pending case from which the contrary inference could fairly be drawn.

■ It is a general and salutary custom of life insurance companies, in the interests of their policy holders as well as themselves, to obtain through various channels, information in respect to applicants for life insurance additional to that which the applicants themselves afford, and it would be unreasonable to hold that such an independent investigation of itself deprives an insurer of the protection of this rule. To have this effect, the investigation, as we have seen, must disclose facts sufficient to expose the falsity of the representations of the applicant or to put the insurer upon further inquiry.

The judgment will be reversed and the case will be remanded to the District Court with instructions to enter a decree cancelling the policies.

Reversed and remanded.