GRACE A. REYNOLDS, Administratrix, Appellant, v. NORTH-WESTERN MUTUAL LIFE INSURANCE COMPANY, Appellee.

INSURANCE:    Preliminary Insurance Dependent on Insurability.
1    An application for life insurance, accompanied by the premium, under an agreement that the insurance shall be effective from the date of the medical examination, provided the insurer is satisfied that the applicant is then insurable, creates preliminary insurance, but with reserved right in the insurer in good faith to reject the application, for noninsurability at the time of the application.

INSURANCE:    Estoppel to Dispute Health Certificate.    The stat-
2    utory provision that a certificate of health and insurability, made by the company's medical examiner, may not be disputed, does not apply *until a policy* has been issued.    (Sec. 1812, Code, 1897.).

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

FEBRUARY 16, 1920.

REHEARING DENIED MAY 17, 1920.

ACTION upon an alleged preliminary contract for insurance for $1,000 upon the life of one Clarence A. Reynolds. There was a trial to a jury, which, by direction of the court, at the conclusion of all the testimony, returned a verdict in favor of the defendant, and plaintiff appeals.—*Affirmed.*

*Baldwin & Baldwin,* for appellant.

*W. J. McDonald* and *Deacon, Good, Sargent & Spangler,* for appellee.

STEVENS, J.—On December 5, 1916, Clarence A. Reynolds, residing at Iowa City, Iowa, made application, in writing, to the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin, for a 20-year endow-

1. INSURANCE: preliminary insurance dependent on insurability.

ment policy for $1,000, and on the same date submitted to an examination by the company's medical examiner, and paid to M. L. Deaton, the soliciting agent, $13.19, the full amount of the first quarterly premium on such policy, from which the receipt copied below was detached from the application, and delivered to him. The material portion of the application and the receipt is as follows:

"It is understood and agreed (1) that if the amount of the premium on the insurance herein applied for is not paid at the time of making this application there shall be no lia‑ bility on the part of the said company under this application unless nor until a policy shall be issued and delivered to me and the first premium thereon actually paid during my life‑ time; and (2) that if the amount of such premium is paid to the said company's agent at the time of making this ap‑ plication the insurance (subject to the provisions of the said company's regular form of policy for the plan applied for) shall be effective from the date of my medical examina‑ tion therefor and such a policy shall be issued and delivered to me or my legal representatives, provided the said com‑ pany in its judgment shall be satisfied as to my insurability, on the plan applied for, on the date of such medical exam‑ ination; and (3) that if said company shall not be so satis‑ fied the amount of the premium paid shall be returned."

"No other form of receipt for advance payment of amount of premium will be recognized by the company.

"Received of Clarence A. Reynolds, who has applied to The Northwestern Mutual Life Insurance Company for

$1,000 insurance on the 20 year End. plan, the sum of Thirteen 19/100 dollars, the amount of the first quarterly premium on such a policy; the said payment being made by him subject to the terms and conditions of agreements (2) and (3) contained in his said application.

"Iowa City, Ia., Dec. 5, 1916.  M. L. Deaton, Agent."

The following appears on the left-hand margin of the above receipt:

"If the amount of the premium is paid at the time of application, this receipt must be completed and given to the applicant; if it is not so paid, the receipt must not be detached."

The application and answers made by Reynolds to the medical examiner, and also his special report, which were made out on the company's regular forms, furnished the agent and medical examiner respectively for that purpose, were, on the same day, forwarded to H. L. Williams, state agent for the company at Davenport, who, in turn, forwarded the same to the company at Milwaukee, in time to be received at its office in that city on the 7th of December.

On the morning of December 8th, the applicant died suddenly, of a disease of the heart known as Stokes-Adams disease. After his death, the application was rejected, upon the ground that he was not insurable on the date of the medical examination, and the premium returned to the widow of the applicant, on December 20th.

I.  Much of the argument of counsel on both sides is devoted to a discussion of the proper construction to be given that portion of the agreement copied above.  Before proceeding, however, to a decision of the questions presented upon plaintiff's appeal, it is necessary to dispose of a question raised by motion in this court to dismiss plaintiff's appeal, and also upon the appeal of defendant from the order and judgment of the court below, directing the clerk to correct his record, so as to make it show the filing of plaintiff's notice of appeal.  The application of plaintiff for the correction of the clerk's record was submitted upon evidence introduced by both sides, and sustained by the court.  We

have examined the record upon this appeal, and are not inclined to interfere with the ruling of the court below. It should be and is affirmed.

II. The dispute over the construction of the above agreement relates to the provisions of divisions "(2)" and "(3)" thereof. Counsel for appellant construes it as a contract for preliminary insurance, binding upon the company at all events; whereas counsel for appellee contends that the application was a mere proposal for a contract of insurance, of the kind and upon the terms therein stated, and did not become binding upon the company until accepted by it at the home office in Milwaukee. Preliminary contracts for insurance are quite common, and are well sustained by courts generally. *Gardner v. North State Mut. Life Ins. Co.,* 163 N. C. 367 (79 S. E. 806); *Cooksey v. Mutual Life Ins. Co.,* 73 Ark. 117 (83 S. W. 317).

Clearly, the first clause of the contract relieves the company from liability until a policy has been issued, delivered, and the premium paid; but does the second clause contemplate nothing more than that the liability of the company, when the premium is paid at the time of making the application, and medical examination had, shall not commence until the application has been received and accepted by it? The provision of the contract is that, if the amount of such premium is paid to "the said company's agent at the time of making this application, the insurance (subject to the provisions of the said company's regular form of policy for the plan applied for) shall be effective from the date of my medical examination therefor and such a policy shall be issued and delivered to me or my legal representatives." Construed, independent of what follows, the clause just quoted makes the insurance effective from the date of the medical examination therefor, and sustains appellant's construction. The contract must, however, be construed as a whole, and effect be given to the following provision thereof:

"Provided the said company in its judgment shall be satisfied as to my insurability, on the plan applied for, on the date of such medical examination."

Counsel for appellant arrives at his conclusion by treating this clause as a limitation upon the following language only, "and such a policy shall be issued and delivered to me or my legal representatives:" that is, he contends that the insurance, becoming effective upon the date of the medical examination, continues in full force until the application is rejected by the company.

There can be no question, under the form of contract in question, that, if the insurance applied for ever becomes effective, it is as of the date of the medical examination. This is true if the application is accepted and a policy issued. That the contract contemplates that liability of the company will attach before the issuance of a policy is clearly indicated by the parenthetical clause of the contract which makes the insurance subject to the provisions of the company's regular form of policy applied for. The receipt, signed by the company's agent and delivered to the applicant, for $13.19, recites that this sum is the amount of the first quarterly premium on such policy. The quarter for which the premium was paid commenced on the date of the medical examination, because that was the date upon which the insurance would have commenced, if a policy had issued. With a somewhat similar contract under consideration, the Supreme Court of South Dakota, in *Albers v. Security Mut. Life Ins. Co.,* (S. D.) 170 N. W. 159, said:

"If the company did not intend that there should be insurance effective pending the date of the application and the date of the approval of the risk and the issuance of the policy, then the company would be charging and obtaining the full amount of the premium for one year, while the period of actual insurance would be as many days less than one year as there were days intervening between the date of the application and the approval.' This would not be dealing honestly with the insured. By the payment of the premium for one year, an insured is entitled to insurance for one year."

We have no doubt that the proviso in the contract relates to all of Clause 2 that precedes it; but it is our con-

clusion that the contract became binding, and the insurance effective, on the date of the medical examination, subject, however, to the provisions of the company's regular form of policy for the plan applied for, and the insurability of the applicant on the date of such medical examination. The insurability of the applicant on the date of the medical examination is, by the contract, made the test of the company's liability.

By the third clause of the contract, the company agrees, in case the application is rejected, to return the premium paid. Unless the application is, in the proper exercise of the company's rights, under the law and the contract, rejected, and the insurance refused, the preliminary contract provides protection from the date of the medical examination; and, if death results from some cause arising after the date of such examination, the company is liable upon the contract, according to its terms; but, if the company, in the proper exercise of its legal rights under the law and the contract, which it is unnecessary for us to define in this opinion, rejects the application, upon the ground that the applicant is not insurable, and returns the premium paid, no liability can arise thereunder.

Counsel for appellee cites a few cases from other jurisdictions, which, it is argued, reach a different conclusion from that reached herein; but these cases deal with contracts differing materially from the one under consideration, and, when carefully analyzed, are not out of harmony with the views expressed in this opinion. The cases cited and relied upon by counsel are as follows: *State v. Robertson,* (Mo.) 191 S. W. 989; *Travis v. Nederland Life Ins. Co.,* 104 Fed. 486; *Wheelock v. Clark,* 21 Wyo. 300 (131 Pac. 35); *Northwestern Mut. Life Ins. Co. v. Neafus,* 145 Ky. 563 (140 S. W. 1026); *New York Life Ins. Co. v. McIntosh,* 86 Miss. 236 (38 So. 775); *Mohrstadt v. Mutual Life Ins. Co.,* 115 Fed. 81; *Citizens Nat. Life Ins. Co. v. Murphy,* 154 Ky. 88 (156 S. W. 1069); *Cooksey v. Mutual Life Ins. Co.,* supra; *Wilson v. Interstate B. M. A. Assn.,* 160 Iowa 184; *Straight v. American Life Ins. Co.,* 184 Iowa 301.

III.   Counsel for appellant also assigns as error the re-
fusal of the court below to submit to the jury the question
whether the refusal of the company to issue a policy was
due to the death of the applicant.   We find nothing in the
record that would have justified the submission of this ques-
tion to the jury.   It is hardly claimed by counsel that de-
ceased, on the date of the medical examination, was, in fact,
entitled to insurance; and it appears without conflict in the
evidence that, when the application was received at the
home office of the company, it was, in the usual course of
office routine, turned over to the clerk in charge of the
Library Bureau records, a department maintained by vari-
ous life insurance companies, co-operating for the purpose
of furnishing information touching applications received
by the various companies, to ascertain whether there was
any information on file in defendant's office as to the ap-
plicant.   A record was found from which it appeared that
deceased was reported by some other company as having
indigestion, or catarrh of the stomach, in February, 1915.
The medical examiner, on December 9th, wrote to the state
agent at Davenport, giving him this information, and re-
questing that he obtain a statement, signed by the appli-
cant, giving full details as to these matters, including the
frequency and symptoms of the attacks, the physician con-
sulted, if any, and also a statement from such physician,
advising as to diagnosis and finding.   Because of the death
of Reynolds before the receipt of this letter by the state
agent, no further investigation appears to have been made.
Some time in April, proofs of death were sent to the com-
pany, upon blanks in the usual form for that purpose.   The
affidavit of Dr. Donovan, the physician who attended Rey-
nolds at the time of his death, attached to and forming a
part of the proofs of death, recited that he had examined
Reynolds, five or six months before his death, and that he
was then afflicted with a heart trouble known as Stokes-
Adams disease; that death resulted therefrom; and that he
had probably had this trouble for two or three years.   The

original proofs of death, including this affidavit, were offered in evidence upon the trial, the latter, however, by the defendant.  Dr. Donovan was not examined as a witness, but several lay witnesses, who had known and were frequently associated with deceased for several years before his death, testified that he was apparently in good health. They did not, however, know that he was afflicted with a disease of the heart.  The company's medical examiner testified that, in making his report to the company on December 5th, he relied in part upon the answers of Reynolds to the questions printed upon the form furnished him by the company. From these questions and answers, we quote the following:·

"When did you last consult a physician, and for what? Dr. Mullin, about a year ago—cold.  Have you fully recovered, and are you now in good health?  Yes.  Give name and address of the physician who attended you?  Dr. Mullin, Iowa City, Iowa.  Have you had any illness, disease, or accident during past ten years not mentioned above?  No. Have you had since childhood any of the following diseases or disorders—Palpitation or any disease of the heart?  No."

We recite this much from the record for the purpose of showing that Reynolds was not, on the date of the medical examination, in a physical condition entitling him to insurance, and that the company, in failing to approve the application when received, was acting in apparent good faith in soliciting further information touching the insurability of deceased.  According to the undisputed testimony, the application was handled in the usual way.  The record, we think, leaves no doubt that he was not entitled to insurance, and that no liability existed upon the contract.  The fact that the company did not, prior to his death, know that deceased had been, for several months, afflicted with heart trouble, should not be given controlling importance.  It goes to the question of his insurability.  No question of fact was presented for submission to the jury.

IV.   But one other contention of counsel for appellant need be referred to.

2. INSURANCE: estoppel to dispute health certificate.

Section 1812 of the Code provides:

"In any case where the medical examiner, or physician acting as such, of any life insurance company or association doing business in the state shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

Fraud is pleaded in this case, but it is not necessary to go into this question. This statute has no application until the policy or certificate has been issued. It was not the purpose of the statute to bind the company to accept as final the report of its local medical examiner, but only to make the acceptance by the company and the issuance of a policy or certificate conclusive thereon. Just what effect, if any, should here be given Section 1783-b, Supplemental Supplement, 1915, to which our attention is called, we need not determine.

We are clear, however, that Section 1812, supra, was not intended to limit the investigation of the company as to the insurability of an applicant to the examination and recommendation of its local medical examiner. All applications for insurance in defendant company, according to the undisputed evidence, must be first passed upon and approved by the chief medical examiner at the home office. The estoppel applies only after a policy or certificate has been issued. Having disposed of all the errors relied upon for reversal, it follows that the ruling and judgment of the court below must be and is—*Affirmed.*

WEAVER, C. J., LADD and GAYNOR, JJ., concur.