**Marilyn Agnes CORTEZ, Individually, and as Administratrix of the Estate of Joseph M. Cortez, Appellants,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

**No. 19189.**

United States Court of Appeals Eighth Circuit.

March 13, 1969.

Adam A. Kreuter, of Claassen, Kreuter & Ibeling, Cedar Rapids, Iowa, for appellants.

Wayne C. Collins, of Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for appellee.

Before MATTHES, MEHAFFY and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

This appeal lies from a judgment notwithstanding the verdict entered by the district court after trial in a declaratory judgment action brought by appellee, Life Insurance Company of North America, for determination of its liability in the sum of $13,000.00 upon an application, conditional receipt and prepayment of premium by Joseph M. Cortez, who died prior to the issuance of any policy but subsequent to a medical examination by appellee's doctor. Appellants are Marilyn Agnes Cortez, widow of Joseph M. Cortez, individually and as administratrix of his estate. We affirm the judgment of the district court.

In May of 1965, Joseph M. Cortez, a trucker, sought a loan from Atlas Loan and Investment Company in order to purchase a new dump truck. He negotiated the loan with Mr. John W. Tubbs, President of Atlas, who made a requirement that Cortez obtain a life insurance policy in the amount of the loan and assign his rights to the proceeds of the policy to Atlas. Tubbs directed Cortez to Mr. Robert Nelson of the Ralston-Nelson Insurance Agency, which was a local agent of appellee. Mr. Nelson's associate in the Ralston-Nelson Agency was Mr. Vernon Pooley, who took Cortez' application on May 13, 1965 and arranged with Cortez to be examined by Dr. G. L. Schmitt on May 14, 1965. In this examination, Dr. Schmitt found, among other things, a four plus sugar content in a routine urinalysis. He told Cortez to bring back another specimen on May 15, 1965. When this was done, Dr. Schmitt completed the necessary forms and mailed them to the company on Friday, May 21, 1965. They were received the following week.

On May 17, 1965, Cortez and Tubbs met to conclude the loan transaction and called Nelson relative to the insurance. The loan was consummated and as part of the transaction Tubbs sent Nelson a check for $85.83, the insurance premium for one year. Upon payment of this premium, Cortez was entitled to the rights under a conditional receipt which provided in pertinent part:

"CONDITIONAL RECEIPT

\* \* \* \* \* \*

"THE PAYMENT ACKNOWLEDGED BY THIS RECEIPT IS MADE AND RECEIVED SUBJECT TO THE FOLLOWING CONDITIONS:

\* \* \* \* \* \*

"A. (1) If the amount received on the date of this receipt is at least equal to a monthly premium for the policy applied for and is not less than $10.00; and

(2) If the medical examinations, if any, required by the Company are completed; and

(3) If the Company at its Home Office determines that on the Application Date each person on whom insurance is requested was insurable at standard rates under the

Company's rules and practices for the policy on the plan, in the amount and for the benefits applied for in such application;

then, but only after such conditions are met, insurance under the terms and conditions of the policy applied for will become effective as of the Application Date regardless of death or change of insurability of any person on whom insurance is requested and which occurs after such Application Date. However, the Company shall not be required to make insurance effective for an amount which together with any amount in effect on the Proposed Insured in the Company would exceed the following limits: (a) $100,000.00 of life insurance; and (b) $50,000.00 of accidental death benefits."

On Wednesday, May 19, 1965, Cortez suffered an acute myocardial infarction which caused his death three days later on May 22. Appellee was not notified of Cortez' death by appellants, but Nelson heard about it on May 28 and immediately notified appellee's Iowa service office by telephone. Appellee's home office in Philadelphia was notified prior to June 1, 1965.

On May 27, 1965, the application with the physical examination report was received in appellee's underwriting department and the premium check was also received, cashed and placed in a "suspense account." [1] The underwriting department of appellee, upon receipt of the medical examination and a comparison with the underwriter's manual, referred the matter to appellee's medical department on that same day because Dr. Schmitt's report indicated high sugar content in the urine, high blood pressure, excessive weight and family history of diabetes. The underwriter commented that the application would probably be declined. The medical department reported that the results of the physical examination indicated a strong presumption that Cortez had diabetes, but that they would be willing to review the case if applicant, at his own expense, would furnish a glucose tolerance test. After this review, the original underwriter sent the file to his supervisor with the comment, "Don, I'll tell them no term. Agree?" The supervisor reviewed the file on June 1, 1965 and revised the comment to "probably no term," and then wrote "yes," indicating that he agreed. The original underwriter wrote appellee's life manager in Des Moines advising that applicant would probably have to rate higher than standard and that term insurance (such as applied for) was probably not available. More details will be supplied in the discussion of the coverage under the conditional receipt heretofore mentioned.

Diversity of citizenship has been established and the substantive law of Iowa applies. Northwestern States Portland Cement Co. v. Hartford F. I. Co., 360 F.2d 531, 534–535 (8th Cir. 1966).

Appellants, in brief, first question the correctness of certain instructions given by the court, but by reason of the view we take of the case such issue is irrelevant and requires no discussion on our part.

Appellants next contend that appellee's motion to dismiss is fatally defective for noncompliance with Fed.R.Civ.P. 50(a). This rule does indeed require that "a motion for a directed verdict shall state the specific grounds therefor." Rule 50(b) also provides that, after entry of a judgment, a party who has moved for directed verdict may move to have the verdict and any judgment entered thereon set aside and judgment entered in accordance with the motion for directed verdict. Thus, a motion for judgment notwithstanding a verdict will not lie unless it is preceded by motion for directed verdict at the close of all the evidence. We look to the record, therefore, to determine whether in

1. This account referred to throughout as a "suspense account" is actually a special account set up by appellee to hold premium money paid with applications while awaiting determination by the underwriting department as to whether the policy will be issued.

fact appellee properly filed a motion for directed verdict. •

After both sides had rested and all the evidence was in, counsel met in chambers with the court, and the court inquired if either had any motion at this stage of trial. Appellee's counsel replied "Your Honor, I would, if he doesn't care to make any." Counsel then made a lengthy statement, part of which is set forth below. There apparently was some question in counsel's mind as to what terminology to apply to the motion because this was a declaratory judgment action, usually not requiring a jury, and a jury was utilized in this case only upon appellants' demand over objection of appellee. Contained in appellee's statement are the following extracts:

"[I]t has always been the position of the plaintiff, and now that the evidence is in and both parties have rested, it is the plaintiff's continued position that there is nothing to submit to the Court (sic), that it is solely a question of interpretation and for determination by the Court on undisputed facts as to whether or not Joseph Cortez was in fact, or was insurable in accordance with the terms of the conditional receipt, and therefore, there is nothing in this record to submit to the jury and that it would be senseless and useless act and in the event the jury made findings adverse to the plaintiff it would be the duty of the Court to set aside the verdict and enter judgment for the plaintiff and declare that plaintiff has no obligation to the defendant either in her capacity as the individual designated in the application, as the person who would be the beneficiary, or the beneficiary designate, and in her capacity as the administratrix of the estate of Joseph Cortez.

\* \* \* \* \* \*

"I feel that not only does our evidence show they were not met but the de-

fendant on his evidence, I think as a matter of law, failed to present any or sufficient evidence to show compliance with the conditions. Therefore, it is our position that there simply isn't any obligation, and the Court should so declare.

"THE COURT: The motion is overruled. \* \* \* "

It is noted that the court asked for a motion and treated the statement of counsel for appellee as a motion for directed verdict in denying it. After a short recess, but prior to submission of the case to the jury, counsel reiterated his motion that no part of the case be submitted to the jury.[2]

■ We stated in Ralston Purina Co. v. Parsons Feed & Farm Supply, 364 F. 2d 57, 60 (8th Cir. 1966), that "the purpose of requiring that specific grounds be stated in the motion is to apprise the trial court of the movant's position." The Tenth Circuit in United States v. Fenix & Scisson, Inc., 360 F.2d 260, 266 (10th Cir. 1966), cert. denied, 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 599 (1967), to the same effect said: "Technical precision is not necessary in stating grounds for the motion so long as the trial court is aware of the movant's position." There can be no doubt but that the trial court here well understood that appellee was moving for a directed verdict on the ground that no evidence existed upon which liability could be found. Certainly it is the better practice to present motions in writing, but such is not a requirement of the rules, and an oral motion is sufficient. United States v. 363 Cases, etc., 143 F.Supp. 219, 223 (W.D.Ark.1956), rev'd on other grounds, 247 F.2d 473 (8th Cir. 1957), cert. denied, McFarling v. United States, 358 U.S. 834, 79 S.Ct. 56, 3 L.Ed.2d 71 (1958).[3]

2. "If the Court please, the plaintiff, without repeating, would incorporate herein by reference, the motion and that part thereof made after both parties had rested, that no part of this case be submitted to the jury and I will not repeat it or

—just incorporate that by reference as a matter of the record."

3. In 5 Moore, Federal Practice ¶ 50.04, at 2338–2339 (2d ed. 1968), it is stated:
"'A motion for a directed verdict shall

■ We hold that the foregoing in practical effect constituted a sufficient motion for directed verdict upon which to base the subsequent motion for judgment notwithstanding the verdict.

*The Insurance Contract.*

The insurance contract applied for by Cortez was a ten-year family protector plan in the amount of $13,000.00. The provision of the conditional receipt with which we are concerned is the one numbered A. (3) set out above to the effect that the policy applied for will become effective only if the company at its home office determines that on the application date applicant was insurable at standard rates under the company's rules and practices for the policy, on the plan, in the amount and for the benefits applied for in the application.

The trial court, upon appellee's motion for judgment n. o. v., reexamined all of the evidence and in its memorandum granting the motion stated:

"No evidence can be found tending to show that plaintiff was not in good faith in determining defendant's decedent not insurable at the standard rate for the policy applied for. Plaintiff's unrefuted evidence established that its determination of uninsurability was in good faith based on the applicant's medical examination, and made according to the company's usual procedures."

■ In conjunction with appellants' argument relating to the instructions, it it contended that appellee, by accepting the premium in advance contracted for temporary or interim insurance. There is no evidence whatsoever that interim insurance was contracted for or intended by appellee. It is well settled Iowa law that a conditional receipt is a part of the insurance contract and said contract must be considered in its entirety. Reynolds v. Northwestern Mut. Ins. Co., 189 Iowa 76, 176 N.W. 207 (1920). The undisputed evidence is that the company in good faith under its rules and regulations determined that Cortez was uninsurable on the application date for the type of insurance he applied for, and thus the company had a legal right to decline issuance of the policy. It may well be that Cortez would have been eligible for some different or rated up policy had he lived and completed the additional medical examination suggested by the company. His untimely death was unfortunate and his family is deserving of sympathy, but our decision is based on the record before us and we cannot speculate on what a more extensive medical examination would have revealed or whether Cortez would have accepted a different type or rated up policy. The company rejected Cortez' application without knowledge of his death, which was subsequent to the application date, on the basis of his weight, his blood pressure, the sugar content in his urine, and a maternal history of diabetes.[4] We think the Iowa case of Reynolds v. Northwestern Mut. Ins. Co., *supra,* and our case of New England Mut. Life Ins. Co. of Boston v. Hinkle, 248 F. 2d 879 (8th Cir. 1957), writ of cert. dismissed, 358 U.S. 65, 79 S.Ct. 116, 3 L.Ed. 2d 106 (1958), are dispositive of the issue here. Cf. Pedersen v. Life of Mid-America Ins. Co., 164 N.W.2d 337 (Iowa 1969).

state the specific grounds therefor.' Failure to state the grounds for the motion with specificity may provide grounds for denying the motion. But the requirement is not a technical one; its function is to assure that the trial court has adequate basis to pass on the motion. Thus, where 'the judge knew what counsel was driving at,' or the 'court fully understood' the grounds for the motion, the motion was deemed sufficiently specific. Defendant's motion at end of plaintiff's case will be considered together with his motion after all evidence is in to determine whether the specificity requirement is met. And an oral statement of grounds for the motion will suffice to meet this requirement."

4. The widow and son of Cortez testified that he was strong and apparently healthy but, of course, they had no knowledge of the high sugar content described by Dr. Schmitt. The family doctor never had occasion to examine Cortez for diabetes.

In *Reynolds, supra,* the applicant died suddenly the day following the receipt in the home office of the medical report and prior to the completion of the investigation of applicant's health. After his death the application was rejected upon the ground that he was not insurable on the date of the medical examination. There, as here, counsel construed the contract as one of preliminary insurance, binding upon the company regardless of subsequent events. The Iowa court, however, held that the contract must be construed in its entirety and by reason of a provision in the receipt similar to the one here that "the insurability of the applicant on the date of the medical examination is, by the contract made the test of the company's liability."

In *Hinkle, supra,* this court faced the same issue on a similar conditional receipt and referred to *Reynolds, supra,* as "one of the leading cases in the field of temporary life insurance." In *Hinkle* the applicant was killed in a crash of an airplane he was operating before his medical examination was made. The applicant there failed to note that he engaged in flying activities and the company would no doubt have issued a policy on a rated up basis. Additionally, in *Hinkle* the general agent wrote upon the conditional receipt the words "immediate coverage." While the application in *Hinkle* was for insurance at standard rates and the premium paid on that basis, the evidence disclosed that applicant was not insurable for the plan and rating applied for, and the company made a good faith determination that he was not insurable. This court there said (248 F.2d at 882):

"In that case [*Reynolds,* supra] the Iowa court had occasion to consider a conditional receipt very similar to the one now before us. There, as in our present case, the first premium had been paid. In the *Reynolds* case the condition was, 'provided the said company in its judgment shall be satisfied as to my insurability, on the plan applied for, on the date of such medical examination.' Here, the material condition is, 'provided that satisfactory evidence that the Proposed Insured is now insurable for the amount, plan and rating applied for is received at the Home Office of the Company in Boston.' The Iowa court in *Reynolds* recognized that preliminary contracts of insurance are valid and enforceable. The court then states that the contract must be construed as a whole, and effect must be given to the condition relating to insurability. The court says (176 N.W. at page 209):

"' * * * The insurability of the applicant on the date of the medical examination is, by the contract made the test of the company's liability.' "

Our opinion in *Hinkle* is quite detailed and calls attention to the fact that the subject of temporary life insurance pending approval of application or issuance of policy has caused the courts considerable difficulty and observes the exhaustive note on the subject in 2 A.L.R.2d 943. We also note in *Hinkle, supra* at 887: "the fact that Hinkle might have been able to obtain insurance at a higher rate is of no help to the plaintiff as such was not the coverage applied for." For later cases on the subject, see and compare Cliborn v. Lincoln Nat'l Life Ins. Co., 332 F.2d 645 (10th Cir. 1964); Thorne v. Aetna Life Ins. Co., 286 F. Supp. 620 (N.D.Ind.1968).

The plain language of the conditional receipt here is certainly not ambiguous and must be considered as a part of the contract. Under the uncontradicted evidence, Cortez was not insurable with appellee at the date of his examination for the type of insurance he applied for, and the trial court was correct in granting the company's motion for judgment n. o. v.

We affirm the judgment of the district court.