Wilma SPARKS, Appellee,

v.

SHELTER LIFE INSURANCE
COMPANY, Appellant.

Wilma SPARKS, Appellant,

v.

SHELTER LIFE INSURANCE
COMPANY, Appellee.

Nos. 87–1768, 87–1861.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 28, 1987.

Decided Feb. 8, 1988.

Toney D. McMillian, Arkadelphia, Ark.,
for appellant.

Travis R. Berry, Arkadelphia, Ark., for
appellee.

Before ARNOLD, Circuit Judge,
HENLEY, Senior Circuit Judge, and
JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

Shelter Life Insurance Company (Shelter) appeals from the district court's [1] order denying its motion for summary judgment and granting Wilma Sparks's motion for partial summary judgment in Sparks's action to recover insurance proceeds. Sparks cross-appeals from the denial of her motion for a new trial on the portion of the case tried to a jury. We affirm.

On April 26, 1983 Matt Raper, an agent for Shelter, procured from Sparks's husband an application for a $50,000 policy of life insurance naming Mrs. Sparks as beneficiary. In conjunction with the completion of the application, Mr. Sparks remitted a check for $45.72 as an advance payment of premiums for the first two months. In addition, Mr. Sparks executed an automatic bank-withdrawal form authorizing Shelter to receive direct payment of future premiums from his bank account.

---

1. The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas.

At this same time, Raper issued Mr. Sparks a "conditional coverage receipt" which provided that "[n]o insurance shall be effective before policy delivery to owner unless all of the conditions on the other side of this receipt are fulfilled exactly." The following was printed on the reverse side of the receipt:

### Conditions Precedent—Effective Date of Insurance

The insurance for which you (Proposed Insured) have applied, will be effective on your application date if all of the following conditions are met.

1. You have paid the full premium with the application.
2. You have completed the medical examination form, if required, and
3. We (SHELTER Life Insurance Company) have determined by our guidelines that all persons in your application are qualified for the types and amounts of insurance you are requesting at the premium paid.

If the above conditions are not met or if we refuse to insure any person exactly as requested in your application, no one will be insured unless we offer and you accept a policy under modified terms. That modified policy will be effective on your application date, only if (1) we deliver your policy while all persons in the application are alive, and (2) to your best knowledge there has been no material change in your answers since your application, and (3) you have paid any required additional premium.

### Special Limitations:

All insurance against death requested by your application is limited to $100,000, including all other insurance pending with us, until your policy has been issued for this application.

**NO AGENT OF SHELTER LIFE INSURANCE COMPANY IS AUTHORIZED TO CHANGE ANY PROVISION OR CONDITION OF THIS RECEIPT.**

In addition, a provision called the "agent's statement," which Shelter provides for the use of its agents, was attached to Mr. Sparks's application. Thereon, Raper had checked a box with the word "no" in response to a question asking whether a medical examination was required. Also on that form, Mr. Sparks signed an authorization for the release of medical information to Shelter. Mr. Sparks's application and his payment were then forwarded to Shelter's home office.

In a form memorandum dated May 5, 1983, an underwriter at Shelter notified Raper to arrange a medical examination for Mr. Sparks. Mr. Sparks died on May 15, 1983, before a medical examination had been performed. Shelter was notified of the death on May 16, 1983. In a letter written to Mr. Sparks dated May 23, 1983, Shelter returned the advance premium and stated that it was withdrawing Sparks's application because of his failure to have a medical examination.

Mrs. Sparks subsequently commenced this action in an Arkansas state court whereupon Shelter removed to federal court on diversity of citizenship grounds. Her complaint asserted that the conditions on the conditional receipt had been fulfilled and that the insurance contract was in full force as of the date of application. She sought to recover the $50,000 face value of the policy, $100,000 in punitive damages as a result of Shelter's malicious and intentional misrepresentations, and $100,000 because of Shelter's bad faith failure to investigate and refusal to honor the policy.[2]

The district court denied Shelter's motion for summary judgment and granted plaintiff's cross-motion for partial summary judgment with regard to Shelter's liability on the policy. The court set the remaining issues for trial.

---

**2.** Although Arkansas statutes do not expressly provide for the recovery of damages predicated upon an insurer's bad faith, the Arkansas Supreme Court has explicitly held that its statute providing only for the recovery of a statutory penalty, interest and attorney's fees, Ark.Stat. Ann. § 66–3238, does not preempt an action in tort for bad faith misconduct. *See Employers Equitable Life Insurance Co. v. Williams,* 282 Ark. 29, 30, 665 S.W.2d 873, 873–74 (1984).

In granting Sparks's motion, the district court determined that Mr. Sparks had complied with the three requirements contained in the conditional receipt. It was undisputed that the first condition, that the premium be paid, was satisfied. The district court found that the second requirement had also been complied with because no medical examination was required at the time of the application and Shelter did not take the appropriate steps to make its subsequent request for an examination known to Mr. Sparks. In this regard, the court further held that Raper was acting within his apparent authority in completing the application and the agent's statement. Finally, the court relied upon an Arkansas Court of Appeals decision, *DeFoure v. MFA Life Insurance Co.*, 268 Ark. 829, 596 S.W.2d 7 (Ct.App.1980), in concluding that although the third requirement caused the conditional receipt to be ambiguous, an examination of the entire application, viewed in the light most favorable to the insured, disclosed conditional coverage as of the application date.

The issues of Shelter's alleged misrepresentation and bad faith were tried to a jury, which found in favor of Shelter. Plaintiff then filed a motion for a new trial, claiming that the jury's verdict was against the weight of the evidence and that the district court committed prejudicial error by refusing to permit Sparks's attorney to question Robert E. Studley, the supervisor of Shelter's life insurance underwriting department, concerning his knowledge of the *DeFoure* decision, where coverage was found under similar terms of a policy issued by Shelter's predecessor. The district court denied Sparks's motion. She cross-appeals from this order, arguing that the district court abused its discretion in disallowing the proffered testimony. Shelter appeals from the district court's order denying its summary judgment motion and granting Sparks's motion for partial summary judgment.

Both parties concede that the question of Shelter's liability on the insurance policy was an appropriate matter for summary judgment disposition because no genuine issues of material fact existed, and the

question was strictly one of law. *See* Fed. R.Civ.P. 56(c). The sole dispute in this portion of the appeal is whether the district court properly concluded that pursuant to Arkansas law Shelter was liable under the conditional coverage receipt at the time of Mr. Sparks's death.

■ Contracts for temporary insurance, in the nature of binding or conditional receipts, are valid and enforceable in Arkansas provided that appropriate language is used and the terms thereof are satisfied. *DeFoure*, 268 Ark. at 833, 596 S.W.2d at 9; *Union Life Insurance Co. v. Rhinehart*, 229 Ark. 388, 391–93, 315 S.W.2d 920, 922–23 (1958). Binding or conditional receipts are subject to the rules of construction generally utilized in interpreting insurance policies; if the provisions are ambiguous, making them susceptible to two reasonable constructions, one favorable to the insurer and one favorable to the insured, the latter will be adopted. *DeFoure*, 268 Ark. at 833, 596 S.W.2d at 9.

Shelter argues that the district court erred in holding that the second requirement contained in the receipt had been complied with because of the statement in the application that "only Shelter at its home office can make or modify contracts or waive any [of Shelter's] ... rights or requirements, and then only in writing," and the provision on the back of the conditional receipt which provided that "no agent of Shelter is authorized to change any provision or condition of this receipt." Shelter urges that these provisions illustrate that Raper, as a soliciting agent, was not authorized to waive the requirement of a medical examination.

However, the district court's conclusion that Raper was acting within his apparent authority when he completed both the application and the agent's statement, and indicated thereon that no medical examination would be required, undermines this argument. *See Millers Mutual Fire Insurance Co. v. Russell*, 246 Ark. 1295, 1298–99, 443 S.W.2d 536, 539 (1969) ("[A] provision ... included for the benefit of the insurer can be waived by the insurer

through the conduct of its agent acting within the real or apparent scope of his authority.") Further, the district court was correct in finding that Mr. Sparks was never advised of Shelter's subsequent determination that a medical examination would be needed; there is no evidence to support a contrary finding.

Shelter further argues that the district court erred in holding that the third requirement rendered the conditional receipt ambiguous. Shelter likens this case to *Cortez v. Life Insurance Co. of North America*, 408 F.2d 500 (8th Cir.1969) (applying Iowa law); *New England Mutual Life Insurance Co. v. Hinkle*, 248 F.2d 879 (8th Cir.1957) (applying Iowa law), *cert. denied*, 358 U.S. 65, 79 S.Ct. 116, 3 L.Ed.2d 106 (1958); *Dove v. Arkansas National Life Insurance Co.*, 238 Ark. 1033, 386 S.W.2d 495 (1965); *National Life & Accident Insurance Co. v. Baker*, 234 Ark. 670, 354 S.W.2d 1 (1962); and *Cooksey v. Mutual Life Insurance Co.*, 73 Ark. 117, 83 S.W. 317 (1904).

Faced with a problem similar to that at bar, the courts in each of these cases held that no interim insurance had been created. Each of these authorities, however, may be distinguished. First, although the conditional receipts therein contained a requirement that the company determine that the proposed insured was qualified, these requirements contained additional terms specifically indicating that the company *at its home office* was to make this determination; by contrast, the receipt issued to Mr. Sparks did not indicate how or when such approval was to be manifested, nor is it clear that Raper was not part of the "we" referenced in the third condition, or that Raper lacked the authority to make this determination.

Moreover, the receipts in the above-cited cases more clearly advised the proposed insured that no coverage would be extended during the interim period until the prescribed conditions had been satisfied. For example, the receipt in *Cortez* stated that "only after such conditions are met, insurance under the terms and conditions of the policy applied for will become effective as of the Application Date." 408 F.2d at 502.

Further, as the district court noted, the Arkansas Court of Appeals in *Defoure* held that a receipt similar to the one in this and the above cases, issued by Shelter's predecessor, provided coverage from the date of application. The court in *DeFoure* stated that had the insurer intended a strict construction of the language of the requirements, it "could have spelled this out to [the proposed insured] who ... was a person unfamiliar with insurance." 268 Ark. at 833, 596 S.W.2d at 9.

We conclude that the *DeFoure* analysis is a proper analysis under Arkansas law, and that the district court in the instant case correctly employed an identical methodology. We agree with the district court that the construction urged by Shelter "would negate conditional coverage, notwithstanding language to the contrary," and conclude that this case does not warrant disruption of the deference accorded to a district court's interpretation of the law of the state in which it sits. *See Pershern v. Fiatallis North America, Inc.*, 834 F.2d 136, 138 (8th Cir.1987) ("[i]n a diversity case in which the state's highest court has not expressly decided an issue, we defer to the local district court's interpretation on the question unless it is 'fundamentally deficient in analysis or otherwise lacking in reasoned authority.' ") (Citation omitted.)

As indicated, Sparks cross-appeals the district court's denial of her motion for a new trial, arguing that the court abused its discretion by refusing to permit her attorney to question Robert F. Studley, the supervisor of Shelter's underwriting department, with respect to his knowledge of the decision of the Arkansas Court of Appeals in *DeFoure*. She contends that Studley's testimony concerning his knowledge of *DeFoure* was relevant because it tended to establish that Shelter knew or should have known that it was providing coverage from the date of application, and, accordingly, that Shelter's refusal to honor her claim was in bad faith.

It is settled that a district court is cloaked with broad discretion concerning

the admissibility of evidence. *United States v. Poston,* 727 F.2d 734, 739 (8th Cir.), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984), and that this court will not substitute its judgment for that of the district court unless an abuse of discretion has occurred. *United States v. Abodeely,* 801 F.2d 1020, 1022 (8th Cir. 1986).

The transcript of Studley's testimony indicates that plaintiff's attorney attempted to demonstrate Shelter's bad faith by establishing that Shelter knew of a number of cases providing for coverage in similar circumstances. The attorney was permitted to inquire as to Studley's knowledge of these cases and Shelter's inclusion in its agent's manual of a provision concerning these decisions. Counsel then attempted to establish that Studley knew or should have known of the decision in *DeFoure* because he was employed as supervisor of the underwriting department at MFA at the time that the *DeFoure* case arose. The district court sustained Shelter's objection because of the court's "prefer[ence] that you stay with this, what the court has done, instead of another case." In addition, the court noted what it considered to be the impropriety of "going and arguing another case here."

Since the attorney was permitted to inquire as to Studley's awareness of other cases finding liability under conditional receipts, the district court's disallowance of questioning with regard to *DeFoure* was largely a matter of the exclusion of cumulative evidence; this does not ordinarily constitute an abuse of discretion. *See Sprynczynatyk v. General Motors Corp.,* 771 F.2d 1112, 1124 (8th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986). Hence, we conclude that the district court did not abuse its discretion, and that its evidentiary ruling does not warrant reversing its denial of plaintiff's motion for a new trial.

Accordingly, the judgment of the district court is affirmed in its entirety.